## IN THE UNITED STATES COURT OF APPEALS
## EIGHTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Appellee, | § | |
| | § | |
| v. | § | Case Nos. 24-2575 |
| | § | 24-2576 |
| KENNETH SIMPSON | § | |
| | § | |
| Defendant-Appellant. | § | |
| | § | |

\* \* \* \* \* \* \* \* \* \*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

\* \* \* \* \* \* \* \* \* \*

CRIMINAL NOS. 4:10-cr-00169; 4:23-cr-00297

\* \* \* \* \* \* \* \* \* \*

## APPELLANT'S AMENDED OPENING BRIEF

KATHRYN B. PARISH
Carlyle Parish LLC
3407 Jefferson, #128
St. Louis, Missouri 63118
(314) 392-0120
FAX (866) 764-1249
Kay@carlyleparishlaw.com
Missouri Bar No. 61781

ATTORNEY FOR APPELLANT

**SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT**

This is consolidated appeal of two cases. The first case arises out of a conviction, judgment, and sentence for the crime of failing to register as a sex offender. ADD-10; 23R.Doc. 162.[1] The second is an appeal from the judgment and sentence revoking his supervised release and imposing a prison sentence and new term of supervised release. ADD-1; 10R.Doc. 312, Specifically, Mr. Simpson contends that the 18 U.S.C. §2252(a)(2)(A) was an unconstitutional exercise of congressional authority and therefore the charge of Failure to Register should have been dismissed, and that the trial judge committed procedural error and imposed substantively unreasonable sentences in imposing a new lifetime term of supervised release for supervised release violation and in imposing a sentence of sixty months, or five times the Guideline minimum in his new criminal case for failure to register as a sex offender. Due to the complexity of the issues involved, counsel believes that oral argument would significantly assist this Court in resolving the issues before it. Mr. Simpson requests 15 minutes for oral argument.

---

[1] For purposes of brevity and clarity, references to documents in Case no. 4:10-cr-00169 (the supervised release revocation) will be designated "10R.Doc." and references to documents in case no. 4:23-cr-00297 (the failure to register case) will be designated "23R.Doc." throughout this brief.

Appellate Case: 24-2575     Page: 2     Date Filed: 02/26/2025 Entry ID: 5489944

# TABLE OF CONTENTS

SUMMARY AND REQUEST FOR ORAL ARGUMENT ......................... i

TABLE OF AUTHORITIES ..................................................... iv

JURISDICTIONAL STATEMENT ............................................ 1

STATEMENT OF THE ISSUES ............................................... 2

STATEMENT OF THE CASE ................................................. 3

SUMMARY OF ARGUMENT ................................................ 10

ARGUMENT AND AUTHORITIES ........................................ 12

I.     **The Court Committed Procedural Error In Imposing of A New Term Of Supervised Release on Revocation of Supervised Release, And The Imposition Of The Lifetime Term Of Supervised Release Was Substantively Unreasonable.**…………12

II.     **The Trial Court Erred In Failing to Grant Defendant's Motion To Dismiss Because §2250a(2)(A) Is An Unconstitutional Exercise of Congressional Authority to Mr. Simpson's Purely Intrastate Failure To Register.**…………………………………… 22

III.    **The Trial Court Erred In Imposing A Sentence Of Sixty Months On Mr. Simpson's Failure To Register As A Sex Offender Because This Sentence Was Substantively Unreasonable.**…..28

IV.    **The Trial Court Erred In Revoking Mr. Simpson's Term Of Supervised Release Because The Action Punished Mr. Simpson Twice For The Same Crime And Therefore Violated His Rights To Be Free From Double Jeopardy**…………………………35

CONCLUSION ................................................................. 39

Appellate Case: 24-2575    Page: 3    Date Filed: 02/26/2025    Entry ID: 5489944

CERTIFICATE OF COMPLIANCE ..........................................................41

CERTIFICATE OF SERVICE...............................................................41

**ADDENDUM**

JUDGMENT IN CASE 4:10CR00169................................................ADD-1

JUDGMENT IN CASE 4:23CR00297..............................................ADD-10

MEMO AND ORDER ON PRETRIAL MOTIONS ........................ADD-18

REPORT AND RECOMMENDATION OF MAGISTRATE ..........ADD-24

Appellate Case: 24-2575    Page: 4    Date Filed: 02/26/2025 Entry ID: 5489944

# TABLE OF AUTHORITIES

***Cases***

*Alabama v. Smith,* 490 U.S. 794 (1989) ......................................................37

*Bacon v. Neer*, 631 F.3d 875 (8th Cir. 2011)..............................................24

*City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432 (1985) ..........29

*Doe v. Miller,* 405 F.3d 700 (8th Cir. 2005)................................................29

*Ex parte Lange,* 85 U.S. 163 (1873)............................................................37

*Gall v. United States*, 552 U.S. 38 (2007). ........................................... 31-32

*Gallagher v. City of Clayton,* 699 F.3d 1013 (8th Cir. 2012) .....................29

*Gwinn v. Awmiller,* 354 F.3d 1211 (10th Cir.2004)....................................28

*Heller v. Doe,* 509 U.S. 312 (1993).............................................................29

*Johnson v. United States*, 529 U.S. 694 (2000) ...........................................36

*Kirby v. Siegelman,* 195 F.3d 1285 (11th Cir.1999) ...................................28

*Meza v. Livingston,* 607 F.3d 392 (5th Cir. 2010) ......................................28

*Missouri v. Hunter,* 459 U.S. 359 (1983) ....................................................38

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ......................26

*Neal v. Shimoda,* 131 F.3d 818 (9th Cir.1997) ...........................................28

*North Carolina v. Pearce*, 395 U.S. 711 (1969)..........................................37

*Romer v. Evans,* 517 U.S. 620 (1996) .........................................................*29*

*Steward v. Folz,* 190 Fed. Appx. 476 (7th Cir. 2006) .................................24

*United States v. Brown*, 828 Fed.Appx. 256 (6th Cir. 2020)........................34

*United States v. Clay*, 752 F.3d 1106 (7th Cir. 2014) ..................................19

*United States v. Coppock*, 765 F.3d 921 (8th Cir. 2014) ........................26, 27

*United States v. Crudup*, 461 F.3d 433 (4th Cir. 2006) ...............................18

*United States v. David*, No. CRIM 1:08CR11 (W.D.N.C. May 12, 2008)...25

iv

*United States v. Estaras*, #23-7483 (Cert. grtd, October 21, 2024)..............19

*United States v. Haymond*, 588 U.S. 634 (2019) .........................................20

*United States v. James,* 792 F.3d 962 (8th Cir. 2015)...................................21

*United States v. Jones,* 980 F.3d 1098 (6th Cir. 2020) ...............................37

*United States v. Johnson,* 529 U.S. 694 (2000) ..................................... 13-15

*United States v. Kane,* 552 F.3d 748 (8th Cir.2009) ..................................31

*United States v. Kebodeaux,* 687 F.3d 232 (5th Cir. 2012).........................28

*United States v. Kebodeaux*, 570 U.S. 387 (2013) .............................. 26-28

*United States v. Kuehl*, 706 F.3d 917 (8th Cir. 2013) ...............................24

*United States v. Lee*, 974 F.3d 670 (6th Cir. 2020).....................................34

*United States v. Lopez*, 514 U.S. 549 (1995)...............................................23

*United States v. May*, 535 F.3d 912 (8th Cir.2008) .............................. 24-25

*United States v. McGhee*, 869 F.3d 703 (8th Cir. 2017) .......................12, 17

*United States v. Miller*, 634 F.3d 841 (5th Cir. 2011)..................................18

*United States v. Miller*, 557 F.3d 910 (8th Cir. 2009)..................................12

*United States v. Miqbel*, 444 F.3d 1173 (9th Cir. 2006) .........................18

*United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011) ....................35

*United States v. Morrison*, 529 U.S. 598 (2000).........................................28

*United States v. Mousseau*, 517 F.3d 1044 (8th Cir. 2008).........................13

*United States v. Palmer*, 380 F.3d 395 (8th Cir. 2004)...............................16

*United States v. Perez-Rodriguez*, 960 F.3d 748 (6th Cir. 2020) ................34

*United States v. Simpson,* 653 Fed. Appx. 850 (8th Cir. 2016)....................36

*United States v. Simpson,* 704 Fed. Appx. 609 (8th Cir. 2017)....................36

*United States v. Simpson,* 932 F.3d 1154 (8th Cir. 2019) ..........................35

*United States v. Smith*, 642 Fed. Appx. 655 (8th Cir. 2016).......................23

Appellate Case: 24-2575    Page: 6    Date Filed: 02/26/2025 Entry ID: 5489944

*United States v. Vargas-Dávila*, 649 F.3d 129 (1st Cir. 2011).....................19

*United States v. Williams*, 443 F.3d 35 (2d Cir. 2006) ................................19

*United States v. Wilson,* 939 F.3d 929 (8th Cir. 2019) ...............................23

*United States v. Young*, 634 F.3d 233 (3d Cir. 2011) ................................19

*Yeager v. United States*, 557 U.S. 110, (2009). .........................................19

**Statutes**

18 U.S.C. §2250 ....................................................................................passim

18 USC §2252 ..................................................................................................27

18 U.S.C. §3553 ....................................................................................passim

18 U.S.C. §3583 ....................................................................................passim

28 U.S.C. §1291 ..................................................................................................1

28 U.S.C. §3231 ..................................................................................................1

18 U.S.C. § 3582...............................................................................................37

**Sentencing Guidelines**

U.S.S.G. §2A3.5 ................................................................................................33

**Other Sources**

United States Sentencing Commission, "Federal Sentencing of Child Pornography: Non-production Offenders." (June 2021)................................................29

United States Sentencing Commission, "Recidivism Among Federal Drug Trafficking Offenders,", ........................................................................30

Appellate Case: 24-2575     Page: 7     Date Filed: 02/26/2025 Entry ID: 5489944

# JURISDICTIONAL STATEMENT

1. Judgment was rendered by United States District Judge Ronald White in case number 4:23CR00297 on July 22, 2024 (ADD-10, 23R.Doc. 162), and a judgment on the supervised release revocation case (4:10CR00169) was entered on the same day (ADD-1, 10R.Doc. 312 . Notice of Appeal was timely filed in both cases on August 1, 2023 (23R.Doc. 165; 10R.Doc. 31).

2. The trial court had jurisdiction under 28 U.S.C. §3231. Mr. Simpson was accused of offenses against the laws of the United States of America.

3. This court has jurisdiction under 28 U.S.C. §1291. Mr. Simpson is appealing the judgment and sentence entered in the district court in a criminal case.

# STATEMENT OF THE ISSUES

**I.** **The Court Committed Procedural Error In Imposing of A New Term Of Supervised Release on Revocation of Supervised Release, And The Imposition Of The Lifetime Term Of Supervised Release Was Substantively Unreasonable.**.……………12

*United States v. Estaras*, #23-7483 (Certiorari granted, October 21, 2024)
*United States v. Haymond*, 588 U.S. 634 (2019)
*United States v. James,* 792 F.3d 962 (8th Cir. 2015*)*
*United States v. Palmer*, 380 F.3d 395 (8th Cir. 2004)

**II.** **The Trial Court Erred In Failing to Grant Defendant's Motion To Dismiss Because §2250a(2)(A) Is An Unconstitutional Exercise of Congressional Authority to Mr. Simpson's Purely Intrastate Failure To Register.**…………………………………… 22

*United States v. Coppock,* 765 F.3d 921 (8th Cir. 2014)
*United States v. Kebodeaux*, 570 U.S. 387 (2013)

**III.** **The Trial Court Erred In Imposing A Sentence Of Sixty Months On Mr. Simpson's Failure To Register As A Sex Offender Because This Sentence Was Substantively Unreasonable**.…...28

*Gall v. United States,* 552 U.S. 38 (2007)
*United States v. Kane*, 552 F.3d 748 (8th Cir.2009)
*United States v. Perez-Rodriguez*, 960 F.3d 748 (6th Cir. 2020)
*United States v. Lee,* 974 F.3d 670 (6th Cir. 2020)

## STATEMENT OF THE CASE

Kenneth Simpson pleaded guilty to one count of receipt of child pornography in Case Number 4:10CR00169 on February 15, 2011 (10R.Doc. 59) and was subsequently sentenced to sixty months in the Bureau of Prisons, to be followed by a lifetime term of supervised release. 10R.Doc. 71. After multiple revocations for failing to register as a sex offender and failing to follow instructions of his probation officer (10R.Docs. 113, 144) and various failures to report (10 R.Doc. 179), Mr. Simpson's probation officer filed another petition to revoke, alleging at first a failure to report to the Residential Reentry Center as required and a failure to report to the probation officer. 10R.Doc. 210. On June 7 2023, Mr. Simpson was indicted in case number 4:23CR00297 for failure to register as a sex offender. 23R.Doc. 1. Approximately four months later, the petition to revoke in his 2010 case was amended to include allegations of multiple violations including failing to register as a sex offender, failure to submit his home and electronics to a search as required, and other technical violations. 10R.Doc. 242.

Attorney Craig Concannon was initially appointed to represent Mr. Simpson in both the new criminal case as well as the action to revoke Mr. Simpson's supervised release. 23R.Doc. 8; 10R.Doc. 210. Though initially represented by counsel, Mr. Simpson filed several pro se motions. In a pleading entitled

"Challenge to the Constitutionality of §2250" Mr. Simpson argued, among other things, that the federal government lacked general police powers and that the fact of his prior federal conviction did not create Constitutional authority for Congress to regulate his purely intrastate failure to register. 23R.Doc. 26 at 2-4. He contrasted his situation with the subsection of the statute which requires a person travel in interstate commerce, arguing, "Section (a)(3) [sic] invokes no such grant of power, in contrast to (a)(2), which directly invokes interstate commerce." *Id.*, at 2.[2] Citing to Justice Roberts' concurrence in *United States v. Kebodeaux*, he urged:

> It makes no difference that the Federal Government would be policing people previously convicted of a federal crime—even a federal sex crime. The fact of a prior federal conviction, by itself, does not give Congress a freestanding, independent, and perpetual interest in protecting the public from the convict's purely intrastate conduct.

23R.Doc. 26 at 3 (citing 570 U.S. 387 at 403 (2013)). Because there was no federal Constitutional power to regulate in the manner in which §2250(a)(2)(A) purported to regulate, he argued, his case must be dismissed. 23R.Doc. 26 at 4.[3] In his

---

[2] The reference here to §2250(a)(3) and §2250(a)(2) appear to be in error. A close reading of Mr. Simpson's pro se pleading makes clear that what he was actually challenging was the provision of §2250(a)(2)(A) that purports to establish federal jurisdiction based on the fact that those subject to it were previously convicted of a federal crime, in contrast to §2250(a)(2)(B) which requires a finding that the person travelled in interstate commerce.

[3] Mr. Simpson again raised these argument in a document filed after the Report and Recommendation was filed but prior to the decision of the district court on pretrial motions. See 23R.Doc. 86.

supervised release case, he also argued that revoking his supervised release would violate double jeopardy. 10R.Doc. 250.

Though the magistrate initially declined to consider Mr. Simpson's pro se motions considering he was represented by counsel, Mr. Simpson later invoked his *Faretta* rights and requested that the Court consider his previously filed pro se motions, which the magistrate agreed to do. 23R.Doc. 58; Tr.Evid.Hrg. at 9-10. The Report and Recommendation of the Magistrate Judge recommended that Mr. Simpson's challenge to SORNA in his various pro se motions be denied, urging simply that, " Challenges to the constitutionality of SORNA have been consistently rejected by the Eighth Circuit," and citing to various cases, none of which addressed the argument being raised by Mr. Simpson as to §2250(a)(3) specifically. 23R.Doc. 69 at 11-12. The District Judge's order adopted the Magistrate's recommendation with little further commentary. 23RDoc. 104 at 5. Mr. Simpson then filed Objections to the Report and recommendation, arguing that, "The challenge to §2250(a)(2) does not involve the Commerce Clause, non-delegation doctrine, or the travel clause, [and] the cases cited have no relevance." 23R.Doc. 77.

Mr. Simpson requested the assistance of counsel for his trial and Mr. Concannon was reappointed to represent Mr. Simpson for trial. 23R.Doc. 179 (Tr.Feb82024) at 3-5. The prosecution introduced evidence of Mr. Simpson's prior

Appellate Case: 24-2575    Page: 12    Date Filed: 02/26/2025 Entry ID: 5489944

conviction through probation officer Lori Meyer, who also testified that she had advised him of the requirement that he register as a sex offender and that he had indicated he would refuse to do so. Tr.Tr: 99-101. Another probation officer, Matthew Shekell testified as to interactions with Mr. Simpson after he was revoked, saying that Mr. Simpson had told him he did not intend to register, despite Mr. Shekell instructing him to do so. Tr.Tr: 109-110.

The Government also called Chris Lack. Mr. Lack first met Mr. Simpson when they worked together at a place called Nadine's and they later both worked at the 1860 Saloon. Tr.Tr: 120. Mr. Lack owned a home in Saint Louis City that he had lived in for about 24 years and would sometimes rent it out to people. Tr.Tr:119 -121. About six months after they met, Mr. Simpson began renting a room in Mr. Lack's home, where he lived for about two years. *Id.*

Probation Officer Amanda Shinkle testified to entering Mr. Lack's house on authority of a probation officer's warrant for Mr. Simpson's arrest and finding certain pieces of mail there with his name on them. Tr.Tr:129-131. Finally, Police Officer Richard Severino testified that City of St. Louis records did not reflect that Mr. Simpson had ever registered as a sex offender with the City of St. Louis. Tr.Tr: 135-136. The jury found Mr. Simpson guilty of failing to register as a sex offender. Tr.Tr: 163.

Both the hearing on Mr. Simpson's final revocation and his sentencing took place on July 22, 2024. Sent.Tr. Mr. Simpson reinvoked his *Faretta* rights at that time and represented himself for the course of these proceedings. Sent.Tr:3. The Court then proceeded to the sentencing in the new criminal case. After hearing brief arguments and then denying certain pending pro se motions, the court adopted the presentence report and calculated Mr. Simpson's Guideline range at 10-12 months. Sent.Tr:12. Mr. Simpson requested a sentence of time served, with no supervised release, arguing that the harm from his crime was negligible, since it was merely a failure to act. Sent.Tr: 13-14. The Government argued for a sentence of 18 months. Sent.Tr:15-16. The court varied upward from the Guidelines, sentencing the Defendant to 60 months, five times the minimum of his guideline range. Sent.Tr: 17. In explaining its reasoning for doing so, the court stated:

> I want to mention to you, Mr. Simpson, that the reason for the upward variance on your case is your continued failure to register. We haven't gotten your attention the last three times you were here. Also, when you were out, you were absconding. You have totally no respect for the law. So I want you to be clear that the reason why I made a variance upward is because of that.

Sent.Tr:20. The court further ordered that the five year term of imprisonment be followed by five years of supervised release.

The court then moved on to the supervised release revocation case. After Mr. Simpson conceded that based on the verdict, he could not contest the finding as to his failure to register and admitted what he described as the "technical

violations" in the petition (Sent.Tr:24), the court gave Mr. Simpson the opportunity

to speak about his sentence, and the following exchange took place:

> THE DEFENDANT: The only issue I have going forward is again
> being put back on supervised release. Considering every time I come
> up here, other people are taken off of it, again, it's simply untrue that
> you can't request that at this point. That really bothers me. I have no
> problem at this point just going on and being left alone. I have no
> problem registering. I just want to go back, after my five years, which
> is already kind of a harsh sentence as it is, and be left alone after that.
> I do not believe that this five-year revolving door that you keep doing
> is legal in any way, shape, or form.

> THE COURT: Mr. Chapman?

> MR. CHAPMAN: Well, Your Honor, the lifetime supervision is
> already imposed. It's part of the Defendant's initial sentence. And in
> reading through the transcripts of all the previous revocation
> proceedings before Judge Sippel, that was explained to him. All I
> would say is that, really, the person who would control the revolving
> door here would be Mr. Simpson. So I would just argue, Your Honor,
> that obviously the term of supervision is already a part of his original
> sentence. In regard to what the Defendant is sentenced to, the
> Government would request the top of the Guidelines, ten months, and
> that that run consecutive to his 2023 Failure to Register case.

> THE DEFENDANT: The imposition of new papers still has to be
> justified.

Sent.Tr: 27-28. Just prior to sentencing Mr. Simpson for the supervised release

revocation, the court stated:

> Based upon Simpson's ongoing blatant defiance of federal, state, and
> local sex offender registration laws, Simpson's history of violations,
> the seriousness of the offense, and his refusal to engage in the basic
> first step of reporting as directed for supervised release, it appears
> Simpson is not amenable to community supervision at this time.

**APPELLANT'S BRIEF** - Page 8

Sent.Tr:27. It then sentenced Mr. Simpson to ten months in prison, to be served consecutive to the 60 month sentence pronounced moments before in his failure to register case and to be followed by a term of lifetime supervision. Sent.Tr:28.

Mr. Simpson timely filed notice of appeals in both cases, and this Court consolidated the appeals. This appeal follows.

# SUMMARY OF ARGUMENT

The trial court erred in imposing a new term of lifetime supervised release on revocation of Mr. Simpson's supervised release. It is appropriate to consider this issue at this time because the term of supervised release was a new term. The court committed procedural error in that it failed to explain the reasons for the sentence on the record, and the imposition of lifetime supervised release was substantively unreasonable both because it was based on the consideration of impermissible factors, specifically the "need to promote respect for the law" under 18 U.S.C. §3553(a)(2)(A), and because it was an unreasonable sentence not supported by the record or giving appropriate weight to appropriate sentencing factors.

The trial court also erred in failing grant Mr. Simpson's pro se motion to dismiss based on the lack of congressional authority to regulate under 18 U.S.C. §2250(a)(2)(A). There is no general federal police power and there is no other constitutional authority under which Congress may regulate Mr. Simpson's purely intrastate failure to register as a sex offender.

Finally, the sixty-month sentence imposed in Mr. Simpson's failure to register case was a substantively unreasonable sentence. It was five times the minimum applicable guideline, more than three times the top of the guidelines range, and six times the average sentence imposed in similar cases. The court gave

too much weight to the factor of "the need to promote respect for the law" and too little weight to other §3553(a) factors. The court did not show and the record did not demonstrate that Mr. Simpson's case fell so far outside of the "mine-run" of cases that such an upward variance was appropriate. The result was a disparate sentence that was far greater than necessary to achieve the aims of sentencing.

# ARGUMENT AND AUTHORITIES

I. **The Court Committed Procedural Error In Imposing A New Term Of Supervised Release on Revocation of Supervised Release, And The Imposition Of The Lifetime Term Of Supervised Release Was Substantively Unreasonable.**

<u>Standard of Review</u>

A district court's revocation sentencing decisions are reviewed using the same standards that are applied to initial sentencing decisions." *United States v. McGhee*, 869 F.3d 703, 705 (8th Cir. 2017)(citing *United States v. Miller*, 557 F.3d 910, 915–16 (8th Cir. 2009)). Under this standard, "we must first ensure that the court committed no significant procedural error, such as improperly calculating the sentence under the Guidelines, failing to consider relevant 18 U.S.C. § 3553(a) sentencing factors, imposing a sentence based on clearly erroneous facts, or failing to adequately explain the reasons for the sentence imposed." *Id.* (citing *Miller,* at 916)).

"Once we are satisfied that the sentencing decision is free of significant procedural error, we consider the substantive reasonableness of the length of the sentence under an abuse-of-discretion standard." *McGhee*, at 706 (citing *Miller*, 557 F.3d at 916). "A court abuses its discretion if it fails to consider a relevant factor that should have received significant weight; gives significant weight to an improper or irrelevant factor; or considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Id.* at 917 (alterations

**APPELLANT'S BRIEF**- Page 12

and quotation marks omitted) (quoting *United States v. Mousseau*, 517 F.3d 1044, 1048 (8th Cir. 2008)),

**A. The Court Imposed A New Term Of Supervised Release At The Time of Sentencing, And Mr. Simpson Preserved His Objection To This Error.**

As a preliminary matter, this issue is reviewable at this time because the court imposed a new term of supervised release at the time of sentencing on the supervised release revocation in this matter. At sentencing for the supervised release revocation, Mr. Simpson requested that no new term of supervised release be imposed, urging that any additional term of supervised release "needed to be justified." Sent.Tr: 27-28. The Government urged that the lifetime served was part of his original sentence. *Id.* Without specifically deciding the question of whether it was, in reality, simply continuing the old term of supervised release or imposing a new term, the court announced that the ten-month sentence it was imposing would be "followed by a lifetime term of supervised release." Sent.Tr:28. In doing so, the court imposed a new term of supervised release.

In *United States v. Johnson*, the Supreme Court grappled with the question of, among other things, whether section 3583 authorized the imposition of a term of supervised release after revocation prior to the amendment to the statute that occurred 1994. 529 U.S. 694 (2000). That amendment added §3583(h), which

specifically authorized post-revocation supervised release term.[4] Based on language in effect prior to the addition of subsection (h), the Supreme Court found that, though unconventional, the meaning of the term "revoke" as used in the statute did not necessarily mean that a term of supervised release was ended, and that the provision allowing a court to require the person to serve "all or part" of their remaining time in prison also allowed a court to require that person to serve the balance of their supervised release on supervision post-revocation. *Johnson,* at 706-708.

Justice Scalia, in his dissent decried the backflips the Court went through to redefine the term "revoke", finding that the word, in no uncertain terms, indicated a clear end to a prior term of supervision. He urged that, the meaning of the term "revoke " employed by the majority is "not merely 'less common' . . . in the context that it is relevant here, it is utterly unheard of." *Id.* at 717–18 (Scalia, dissent). Justice Scalia continued:

> One can "call or summon back" a person or thing without implication
> of annulment, but it is quite impossible to "call or summon back" an
> order or decree without that implication—which is precisely why the

---

[4] The original question presented *Johnson* was whether it violated the Ex Post Facto clause to impose a term of supervised release post-revocation based on actions that occurred prior to the effective date of §3583(h). The Court found it would, but that the imposition of the term of supervised released was nonetheless valid because a revocation allowed a court to require a person to serve the balance of their supervised release term on supervised release.

Appellate Case: 24-2575     Page: 21     Date Filed: 02/26/2025 Entry ID: 5489944

primary meaning of revoke has shifted from its root meaning ("call or summon back") to the meaning that it bears in its most common context, i.e., when applied to orders or decrees ("cancel or annul"). Of course the acid test of whether a word can reasonably bear a particular meaning is whether you could use the word in that sense at a cocktail party without having people look at you funny. The Court's assigned meaning would surely fail that test, even late in the evening. Try telling someone, "Though I do not cancel or annul my earlier action, I revoke it." The notion that Congress, by the phrase "revoke a term of supervised release," meant "recall but not cancel a term of supervised release" is both linguistically and conceptually absurd.

*Id.* at 719.

The *Johnson* majority's justifications for its admittedly "unconventional" reading of the term "revoke" are no longer valid under today's version of the statute, under which Mr. Simpson was sentenced. When it added §3583(h) in 1994, Congress clearly intended the term "revoked" to end a prior supervised release term at the time of the revocation. This is clear in the plain language of §3583(h), which makes no mention of the "balance" of a supervised release term, but rather assumes a court's authority to impose a term of supervised release as otherwise authorized by statute. The section at issue today reads as follows:

When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

§3583(h). The statute specifically indicates that after a term of release is "revoked" the Defendant may be "placed" on a term of supervised release after imprisonment. Notably, it does ***not*** say that the defendant should or may be "continued on the prior term of supervised release" or that he may be "required to serve the balance" of his supervised release term. Nor does it indicate the new term should be imposed consecutively or concurrently to the term he was already serving, an issue that the Congress undoubtedly would have wanted to address had it assumed the other supervised release term remained running.

This Court explicitly decided this issue *United States v. Palmer*, holding that a term of supervised release imposed under §3583(h), rather than the prior version of the statute analyzed in *Johnson*, was "new term" of supervised release. 380 F.3d 395, 398 (8th Cir. 2004). There can be no doubt under this precedent that the lifetime term of supervised release imposed by the Court at the time of Mr. Simpson's supervised release revocation was a "new term" of supervised release, imposed for the first time at his supervised release revocation. This issue with regard to the new term of supervised release imposed at the time of Mr. Simpson's supervised release revocation is therefore reviewable at this time.

### B. The Court Committed Procedural Error In Imposing The Term Of Lifetime Supervised Release

Despite Mr. Simpson's objection that a new term of supervised release "must be justified", the court did not at any point explain why it believed such a

long term of supervision was necessary. In support of its decision to impose the maximum guideline sentence in the revocation case, followed by a term of lifetime supervision, the Court indicated only that it did not believe Mr. Simpson was amenable to supervision (Sent.Tr:27) but gave no justification for its imposition of such a long term of community supervision nonetheless. The court's failure to explain its sentencing decision on this highly contested issue was procedural error. *See McGhee*, at 705 (It is procedural error to fail to adequately explain the sentence imposed).

### C. The Imposition Of Lifetime Supervision Was Substantively Unreasonable.

#### 1. The Sentence Was Substantively Unreasonable Because The Court Considered An Improper Factor In Sentencing The Defendant.

To the extent to Court did justify the punishment imposed, the only justification of the sentence of imprisonment or supervised release that was offered by the court was the need to promote respect for the law, as articulated as a sentencing factor in §3553(a)(2)(A)[5]. But the statutes dictating what the court may consider in imposing, setting a term for, and revoking supervised release explicitly eliminates §3553(a)(2)(A) from the list of sentencing factors to be considered. See

---

[5]Section 3553(a)(2)(A) requires the court to consider in imposing a prison sentence, the need for the sentence imposed to "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

Appellate Case: 24-2575    Page: 24    Date Filed: 02/26/2025 Entry ID: 5489944

18 U.S.C. §3583(c) and §3583(e)(a court should consider "section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)" in imposing a term of, revoking a term of, or determining a term of supervised release. Four different courts of appeals (the Fourth, Fifth, Ninth, and Tenth Circuits) have found that it is impermissible to consider the retributive factors outlined in §3553(a)(2)(A) in imposing a sentence for revocation of supervised release. *See United States v. Crudup*, 461 F.3d 433, 439 (4th Cir. 2006) ("According to § 3583(e), in devising a revocation sentence the district court is not authorized to consider whether the revocation sentence 'reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense,' §3553(a)(2)(A), or whether there are other 'kinds of sentences available,' §3553(a)(3)."); *United States v. Miller*, 634 F.3d 841, 844 (5th Cir. 2011)(holding that a district court revoking supervised release "may not consider § 3553(a)(2)(A) because Congress deliberately omitted that factor from the permissible factors enumerated in the statute"); *United States v. Miqbel*, 444 F.3d 1173, 1182 (9th Cir. 2006) ("Given that § 3553(a)(2)(A) is a factor that Congress deliberately omitted from the list applicable to revocation sentencing, relying on that factor when imposing a revocation sentence would be improper."); *United States v. Booker,* 63 F.4th 1254, 1261 (10th Cir. 2023) ("[T]he omission of § 3553(a)(2)(A) from the sentencing factors enumerated in §3583(e) means that a district court may not

Appellate Case: 24-2575     Page: 25     Date Filed: 02/26/2025 Entry ID: 5489944

consider the need for a revocation sentence to (1) 'reflect the seriousness of the offense,' (2) 'promote respect for the law,' and (3) 'provide just punishment for the offense' when modifying or revoking a term of supervised release.")).[6] Because the Court considered factors under §3553(a)(2)(A), which are improper to consider under §3583, the resulting sentence of lifetime supervised release cannot be considered reasonable.

### 2. The Court Gave Undue Weight To An Inappropriate Factor And Committed An Error In Judgment.

Regardless of what the Supreme Court decides in *Estaras* and whether a Court may give any consideration to §3553(a)(2)(A), the court committed a clear error in judgment and abused its discretion in imposing a term of lifetime supervised release. Even if a court may consider §3553(A)(2)(a), this was a clear error in judgment because it appears to be the ***only*** factor the court considered.

---

[6] Four other courts of appeals—the First, Second, Third and Seventh Circuits - have ruled that a Court can consider 3553(a)(2)(A) when imposing a sentence on revocation of supervised release. See *United States v. Vargas-Dávila*, 649 F.3d 129, 132 (1st Cir. 2011); *United States v. Williams*, 443 F.3d 35, 47 (2d Cir. 2006); *United States v. Young*, 634 F.3d 233, 239 (3d Cir. 2011); *United States v. Clay*, 752 F.3d 1106, 1108 (7th Cir. 2014) The question of whether it is legally permissible for a Court to consider retribution in imposing sentences on supervised release revocations is currently before the Supreme Court in *United States v. Estaras*, #23-7483 (Certiorari granted, October 21, 2024).

**APPELLANT'S BRIEF**- Page 19

Moreover, the lifetime term of supervision was an error because it was illogical, unproductive, and inconsistent with the purposes of supervised release in light of the evidence in the record. It is now firmly acknowledged by the United States Supreme Court that the purpose of supervised release is, unlike the purpose of probation and parole "only to encourage rehabilitation after the completion of his prison term." *United States v. Haymond*, 588 U.S. 634, 652 (2019); See also *Estaras v. United States*, Case No. 23-7483, Brief of Criminal Law Scholars As Amici Curiae In Support of Petitioners (Supreme Court, filed December 16, 2024)(discussing the history of supervised release and its purpose).

In this case, there was no indication that lifetime supervision imposed after revocation of Mr. Simpson's supervised release served any rehabilitative purpose or any purpose at all outside of, arguably, retribution for failing to comply with the court's prior orders regarding supervision. In imposing the maximum prison sentence under the guidelines' policy statement and the maximum statutory sentence of lifetime supervision, the court stated only what it determined were grounds for believing that Mr. Simpson "was not amenable to community supervision at this time." However, as a justification for lifetime supervision, this was completely illogical. The court had only moments before imposed a sixty-month sentence in the new criminal failure to register case, and community supervision "at that time" was thus already out of the question. Moreover, the

evidence was that though he was not amenable to supervision, he also was not dangerous, and did not require supervision to reintegrate back into society.

In *United States v. James*, this Court evaluated whether a lifetime term of supervised release was appropriate for someone who had a prior sex offense and then later failed to register. It found, in that case, that it was, stating as follows:

> While James has only been convicted of one sex offense, James's inveterate sexual deviance illustrates why criminal history may inadequately capture the gravity of a defendant's actions. James's sexual psychopathy was not a passing personality quirk that temporarily manifested itself in 1979. Rather, James's sexual deviance goes back to his teenage years when he sexually abused a young girl. This deviance continued in his twenties when he abused another young girl; in his thirties when he abused his own children, nephews, and others; and in his forties when he engaged in a sexual relationship with a mentally handicapped woman. Further, the court noted that James's recovery from his mental diagnoses is at best questionable. James has never completed any mental-health or sex-offender treatment program. The potential dormancy of James's untreated conditions, taken together with James's past conduct, provide sufficient basis for affirming the district court's exercise of discretion in varying upward in the term of supervised release.

792 F.3d 962, 968–69 (8th Cir. 2015).

In this case, no such similar factors existed. Mr. Simpson's offense requiring registration was possession of child pornography, not, as in *James* a crime involving sex with a four-year old girl. There was no indication that he had a further history of sex abuse of any kind or any significant pattern of sexual deviance or current issues with untreated mental health issues.

In contrast, the evidence in the record suggested that despite his lack of supervision, Mr. Simpson was doing just fine reintegrating into society and not presenting a danger to it even without supervision. Evidence presented by the prosecution at trial suggested that at the time he was arrested, he was working, had friends and had a stable job and a stable place to live, that he made his rent payments and did not cause problems. See generally Trial.Tr.:118-123 (testimony of Christopher Lack). Aside from the failure to register as a sex offender, Mr. Simpson has committed no new violations of the law not only since the time he was placed on supervised release in this case, but since the time of his indictment. 23PSR (R.Doc. 151) at 10. The possession of child pornography that was the basis for his 2010 case was his first and only conviction at that point. 10PSR (R.Doc 64 at 8). And his revocations prior to this one were again based on failures to register and report as required. See 10R.Doc.131(violations failure to register/failure to report to residential reentry center (2016)); 10R.Doc. 162 (failure to report to probation officer and failure to reside in residential reentry). While this record may suggest that Mr. Simpson is not amenable to supervision, it does not suggest that a lengthy term of supervision, particularly a lifetime term, will be necessary or productive in reintegrating him into society or protecting society from further crimes of the defendant.

The imposition of a new term of lifetime supervision was substantively

unreasonable.

**II.    The Trial Court Erred In Failing to Grant Defendant's Motion To Dismiss Because §2250(a)(2)(A) Is An Unconstitutional Exercise of Congressional Authority to Mr. Simpson's Purely Intrastate Failure To Register.**

<u>Standard of Review</u>

The denial of a motion to dismiss an indictment is reviewed de novo. *United*

*States v. Wilson,* 939 F.3d 929, 931 (8th Cir. 2019).

A. **This Court Should Consider This Issue At this Time**.

There is little doubt that a federal defendant may challenge Congress's

authority to enact the statute under which he is being charged. See, e.g. *United*

*States v. Lopez*, 514 U.S. 549, 551 (1995)(invalidating the provision of the Gun

Free School Zones Act of 1990 that criminalized the knowing possession of a

firearm in a school zone). Mr. Simpson was charged in case number 4:2300297

with failure to register as a sex offender under 18 U.S.C. §2250(a)(2)(A) in that he

was required to register "by reason of a conviction under Federal law." See

23R.Doc. 1. In his motions to dismiss based on the Unconstitutionality of the

Federal Registration Requirement, Mr. Simpson argued that federal registration

requirements under §2250(a)(3) is unconstitutional usurpation of powers reserved

to the states and that the federal court therefore lacked jurisdiction to prosecute his

failure to register. In response, the magistrate cited to a number of 8th Circuit cases

**APPELLANT'S BRIEF**- Page 23

upholding SORNA's validity against various constitutional challenges (23R.Doc. 69). The district court merely cited to the Report and Recommendation and found that "constitutional challenges to . . . the Sex Offender Registration and Notification Act, and 18 U.S.C. 2250(a) have been addressed and rejected in binding Eighth Circuit precedent." 23R.Doc. 104 at 5.

But the cases cited by the magistrate did not address the argument raised by Mr. Simpson. 23R.Doc. 69 at 6 (citing to *United States v. Smith*, 642 Fed. Appx. 655, 656 (8th Cir. 2016) (rejecting Commerce Clause challenge to SORNA); *United States v. Kuehl*, 706 F.3d 917 (8th Cir. 2013) (holding the congressional grant of authority to the Attorney General to be constitutionally valid because Congress had set forth an intelligible principle to guide in the exercise of the granted authority); *Bacon v. Neer*, 631 F.3d 875, 878 (8th Cir. 2011) (rejecting Tenth Amendment and right-to-travel challenges to SORNA); *United States v. Waddle*, 612 F.3d 1027, 1029 (8th Cir. 2010) (holding SORNA does not violate the Ex Post Facto Clause); *Steward v. Folz,* 190 Fed. Appx. 476, 478-79 (7th Cir. 2006) (holding that SORNA's registration requirement does not constitute double jeopardy).

Of the cases cited by the Magistrate, the only one to directly address Congress's authority to regulate in this area was the unpublished opinion of *Smith*, 642 F. App'x 655. This Court in *Smith* cited to *United States v. May*, 535 F.3d 912,

921–22 (8th Cir.2008) for the holding that SORNA's criminal penalties "are a valid exercise of the Commerce Clause, because ***§2250(a)(2)(B)*** requires the government to prove that the defendant traveled in interstate commerce." (emphasis added).

But Mr. Simpson was not charged under §2250(a)(2)(B), the indictment in his case did not require a finding that he traveled in interstate commerce, and his pleadings specifically argued that he had not traveled in interstate commerce and therefor that was not the subsection of the statute at issue in his case. See 23R.Docs. 1, 26, 86. Rather, he was charged under §2250(a)(2)(A), under which the federal authority to regulate appears to be based on the fact that Mr. Simpson was a sex offender because of a conviction under federal law. At least one court has pointed out that this particular clause, "has no Commerce Clause implication." *United States v. David*, No. CRIM 1:08CR11, 2008 WL 2045830, at *8 (W.D.N.C. May 12, 2008), aff'd, 333 F. App'x 726 (4th Cir. 2009).

The crux of Mr. Simpson's argument was that the mere fact of his prior federal conviction did not give the federal Government authority to regulate in an area traditionally left to the states. See 23R.Docs. 26, 86. Neither the Magistrate nor the district court addressed this issue. This Court should do so now.

### B. Penalizing The Purely Intrastate Failure Of A Federal Sex Offender To Register Under §2250(a)(2)(A) is not a Constitutional Exercise of Federal Power.

"In our federal system, the National Government possesses only limited powers; the States and the people retain the remainder." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 533 (2012). The issue of the Federal Government's authority to penalize the failure to register of federal offenders under §2250(a)(2)(A) was addressed by the Supreme Court in *United States v. Kebodeaux*, 570 U.S. 387, 392, (2013) and by this Court in *United States v. Coppock*, 765 F.3d 921, 922 (8th Cir. 2014). In those cases, this and the Supreme Court found that penalizing offenders who failed to register for offenses under the Uniform Code of Military Justice was a fair exercise of Congress's constitutional authority under the necessary and proper clause, as necessary and proper to its power to regulate the miliary as implemented in the Uniform Military Code of Justice. *Id.*

In a concurring opinion in *Kebodeaux,* Justice Roberts emphasized that though he agreed the particular application in the case before the Court could be upheld under Congress's military powers and the necessary proper clause, it could not be upheld in the name of public safety or any kind of general federal police power because no such federal power existed:

> It makes no difference that the Federal Government would be policing people previously convicted of a federal crime—even a federal sex

Appellate Case: 24-2575    Page: 33    Date Filed: 02/26/2025 Entry ID: 5489944

crime. The fact of a prior federal conviction, by itself, does not give Congress a freestanding, independent, and perpetual interest in protecting the public from the convict's purely intrastate conduct.

570 U.S., at 403 (Roberts, concurring).

In dissent, Justice Scalia reiterated that he did not believe the registration requirement was, "'reasonably adapted,' " to carrying into execution some other, valid enactment," and therefore not a Constitutional exercise of federal authority. *Id.* at 406 (Scalia, dissent).

Mr. Simpson's case is different from *Kebedeaux* and *Coppock* because the conviction that made Mr. Simpson subject to penalty for his failure to register under §2250(a)(2)(A) was not a conviction by a military tribunal under the Universal Code of Military Justice, but rather simply conviction of a federal crime, specifically, receipt of child pornography under 18 USC §2252(a)(2). And while the statute for receipt of child pornography itself requires that "a means or facility of interstate or foreign commerce" was used, as Justices Thomas and Scalia argued in their joint *Kebodeaux* dissent, the Commerce Clause cannot be considered a basis for the authority asserted by Congress under § 2250(a)(2)(A):

> Nor does the Commerce Clause—the enumerated power that the Court has construed most broadly—support § 2250(a)(2)(A). Under this Court's precedents, Congress may use its Commerce Clause power to regulate (1) " 'the use of the channels of interstate commerce,' " (2) " 'the instrumentalities of interstate commerce, or persons or things in interstate commerce,' " and (3) economic activities that " 'substantially affect interstate commerce.' " . . . Section 2250(a)(2)(A) does not fall within the first two categories

because it is not limited to regulating sex offenders who have traveled in interstate commerce. Instead, it applies to all federal sex offenders who fail to register, even if they never cross state lines. Nor does § 2250(a)(2)(A) fall within the third category. Congress may not regulate noneconomic activity, such as sex crimes, based on the effect it might have on interstate commerce. Cf. Morrison, supra, at 617, 120 S.Ct. 1740. ("We ... reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce"). In short, § 2250(a)(2)(A) regulates activity that is neither " 'interstate' " nor " 'commercial,' " . . . and, thus, it cannot be justified on the ground that it executes Congress' power to regulate interstate commerce.

570 U.S. at 411–12 (Thomas, dissent)(citing to *Lopez*, 514 U.S. at 558–559;

*United States v. Morrison*, 529 U.S. 598 (2000); *United States v. Kebodeaux,* 687

F.3d 232 (5th Cir. 2012)(decision below, rev'd and remanded, 570 U.S. 387.

There is no general federal police authority and no valid constitutional

authority for Congress's enactment of §2250(a)(2)(A). Mr. Simpson's Motion to

Dismiss should have been granted.

## C. The Indictment Should Have Been Dismissed Because The Registration Requirement Violates Due Process.

A general liberty interest in not being required to register as a sex offender

has been recognized by courts. *Meza v. Livingston,* 607 F.3d 392, 401 (5th Cir.

2010), decision clarified on denial of reh'g, No. 09-50367, 2010 WL 6511727 (5th

Cir. Oct. 19, 2010); *Gwinn v. Awmiller*, 354 F.3d 1211, 1217 (10th Cir.2004);

*Kirby v. Siegelman*, 195 F.3d 1285, 1291–92 (11th Cir.1999); *Neal v. Shimoda*,

131 F.3d 818, 829–30 (9th Cir.1997). Under the due process clause, a statutory

restriction that is based on an unprotected class which does not inhibit a fundamental right is subject to rational basis review. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012)(citing *Romer v. Evans*, 517 U.S. 620, 631, (1996); *Heller v. Doe*, 509 U.S. 312, 319–20 (1993). "Mere negative attitudes, or fear, unsubstantiated" are not a permissible basis for class-based distinctions in the law. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985). The rational basis for laws surrounding sex offenders have sometimes been upheld on the basis that such offenders have high rates of recidivism. See e.g. *Doe v. Miller*, 405 F.3d 700, 716 (8th Cir. 2005). But the idea that child pornography offenders like Mr. Simpson are any more likely to recidivate than other offenders does not appear to be substantiated by the evidence. According to a report by the United States Sentencing Commission in 2021, only 4.3% of non-production pornography offenders were re-arrested for a sex offense within three years.[7] The overall rate of a new arrests within that time-frame was 27.6%.[8] This statistic

_____

[7] United States Sentencing Commission, "Federal Sentencing of Child Pornography: Non-production Offenders." (June 2021) (available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf)(A summary of the recidivism statistics in the report is available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/backgrounders/rg_child-pornography-non-production.pdf).

[8] *Id.*

**APPELLANT'S BRIEF**- Page 29

would seem to cover any new arrest, even those resulting from relatively benign supervised release violations, and not constituting any new crime. A separate report by the sentencing commission suggests that the recidivism rate for drug offenders after three years was 31.6%, actually higher than that of for non-production pornography offenses.[9] The same report suggested that the five-year recidivism rate for non-drug trafficking offenders is higher than for drug-trafficking offenders, suggesting that child pornography offenders' recidivism rates are actually among the lowest, not highest, rates of recidivism. Recidivism cannot provide a rational basis for depriving non-production child pornography offenders like Mr. Simpson of their liberty, as the idea that their recidivism rates are higher than other offenders is an "unsubstantiated fear" rather than a substantiated fact.

Nor can it be shown that merely putting one's name on a list of offenders would in any way prevent recidivism or serve a larger government purpose. Because federal court records are a matter of public record, the fact of a person's conviction is always a part of the public record, and a separate list of certain offenders does not serve any particular purpose of protecting the public.

---

[9] See United States Sentencing Commission, "Recidivism Among Federal Drug Trafficking Offenders,", p. 13 (available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research publications/2017/20170221_Recidivism-Drugs.pdf)

The registration requirement lacks a rational basis and therefore was not a legal requirement, and Mr. Simpson therefore could not be prosecuted for his failure to do so. The Motion to Dismiss Should have been granted.

## III. The Trial Court Erred In Imposing A Sentence Of Sixty Months On Mr. Simpson's Failure To Register As A Sex Offender Because This Sentence Was Substantively Unreasonable.

<u>Standard of Review</u>

The substantive reasonableness of a sentence is reviewed for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). In conducting this review, courts are to "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* If the defendant's sentence is within the Guidelines range, then courts "may, but [are] not required to, apply a presumption of reasonableness." *Id.* For sentences outside the Guideline range, this Court is to consider, "the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* A district court abuses its discretion when it (1) "fails to consider a relevant factor that should have received significant weight"; (2) "gives significant weight to an improper or irrelevant factor"; or (3) "considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Kane,* 552 F.3d 748, 752 (8th Cir.2009) (internal quotations and citation omitted).

Appellate Case: 24-2575     Page: 38     Date Filed: 02/26/2025 Entry ID: 5489944

<u>Argument</u>

Deviations from the Guidelines must be coupled with a "justification [that] is sufficiently compelling to support the degree of the variance." *Gall,* at 51. "[A] major departure should be supported by a more significant justification than a minor one." *Id.*

In Mr. Simpson's case, the sixty-month sentence imposed was five times that of the 12-month guideline minimum and close to three times the top of the guideline of 18 months (also the sentence being advocated for by the prosecutor in this case). In justifying its sentence the only §3553 factor the judge seemed to rely on was §3553(a)(2)(A), i.e. and specifically the need to, "promote respect for the law. . . ." While this was a permissible factor for the court to consider at an initial sentencing, the court gave this factor undue weight, failed to give appropriate weight to the other sentencing factors and committed an error in judgment.

Specifically, the history and characteristics of the defendant and his criminal history both suggested that a sentence at or below the bottom of the guidelines range was an appropriate sentence in this case. The presentence report established that Mr. Simpson had no criminal history other than the receipt of child pornography offense that was the basis for the requirement that he register, and further that, despite his lack of supervision over the years, aside from the failure to register he was not committing other crimes. Moreover, testimony of the

prosecution's own witness at trial established that he was working, had a stable job and housing, and was regularly keeping up with his obligations, even despite the lack of supervision. Tr.Tr:118-124. Even to the extent he committed a crime by failing to register as a sex offender, the record did not establish that he otherwise presented any danger to society or any other specific person.

Nor did the court apparently consider possible sentencing disparities as required by § 3553(a)(5). According to the Judiciary Sentencing Information table (JSIN) maintained by the United States Sentencing Commission, during fiscal years 2019-1023, 67 defendants were sentenced under U.S.S.G. §2A3.5 (the Guideline governing Mr. Simpson's sentence in this case) and, like Mr. Simpson were at an offense level of 12 and a criminal history category of II. The average of those sentences was ten months, and the median sentence was twelve months.[10] The imposition of a sixty-month sentence on Mr. Simpson created a gross disparity in sentencing.

The Sixth Circuit has recently found that upward variances not amounting to the huge variance imposed in Mr. Simpson's case constituted substantively unreasonable sentences where the district court did not adequately establish that

_____

[10] The JSIN data can be found at
https://jsin.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FJSI
N%2F_portal%2FJSIN&page=Sentencing%20Table (last accessed December 23,
2024).

the case before it fell outside of the "mine-run" of cases governed by the particular guideline at issue. See e.g. *United States v. Perez-Rodriguez*, 960 F.3d 748 (6th Cir. 2020)(A sentence of 24 months in an illegal reentry case was unreasonable and created unwarranted disparity in sentencing where the Guideline range was 8-14 months); *United States v. Lee*, 974 F.3d 670 (6th Cir. 2020)(a sentence of 60 months for possession of a stolen firearm, when the Guidelines range was 30 to 37 months' was "far too long for his offense of conviction" and sentencing court "placed too much weight on Lee's criminal history, and not enough weight on the need to treat like defendants alike."); *United States v. Brown*, 828 Fed. Appx. 256 (6th Cir. 2020)(An above-Guidelines sentence of 60 months for distributing heroin was substantively unreasonable because this was a "mine-run case" and the upward variance from the Guidelines range of 24 to 30 months would create "unwarranted sentencing disparities.")

Here too, the Guidelines adequately accounted for the Defendant's actions in shirking the law by failing to register, and the court did not find, and the record did not reflect that a sentence of six times the average sentence for similarly situated defendants and five times the guidelines minimum was necessary to meet all of the aims of sentencing. Indeed, it was a sentence that was "greater than necessary" to those ends, and this case should be reversed on that ground.

**IV.    The Trial Court Erred In Revoking Mr. Simpson's Term Of Supervised Release Because The Action Punished Mr. Simpson Twice For The Same Crime And Therefore Violated His Rights To Be Free From Double Jeopardy.**

<u>Standard of Review</u>

This Court reviews de novo the question of whether a defendant's constitutional rights have been violated. *United States v. Montgomery*, 635 F.3d 1074, 1091 (8th Cir. 2011).

**A. This Court Should Consider This Argument At This Time.**

In the context of Mr. Simpson's prior revocation, this Court declined to consider the issue raised by Mr. Simpson that imposition of a penalty based on a Supervised Release violation violates double jeopardy on the grounds that the arguments constituted a "collateral attack" on the prior rulings of this Court in Mr. Simpson's case. *United States v. Simpson*, 932 F.3d 1154, 1157 (8th Cir. 2019). Since that time, the Supreme Court made clear in *Haymond* that a constitutional challenge to the imposition of a sentence on supervised release is appropriately raised at the time of a supervised release revocation. 588 U.S. 634.

Additionally, in none of Mr. Simpson's prior proceedings has this Court addressed the substance of the question of whether a supervised release revocation violates Mr. Simpson's Sixth Amendment right to be free from double jeopardy. When addressing the issue in 2019, this Court cited to its opinions in Mr.

Simpson's cases in 2016, 2017. *Id.* But both of those cases again mischaracterized Mr. Simpson's claim as a "collateral attack" on the prior judgment, and failed to address the question of whether revoking a person's supervised release constituted double jeopardy. *See United States v. Simpson*, 704 Fed. Appx. 609 (8th Cir. 2017) cert. denied; *United States v. Simpson*, 653 Fed. Appx. 850 (8th Cir. 2016), cert. denied, —— U.S. ——, 137 S. Ct. 318, 196 L.Ed.2d 232 (2016)).

In reality, and as further explained below, the district court could not have addressed the double jeopardy issue on direct appeal and the argument should not be considered a collateral attack, because, as explained below, the double jeopardy violation does not take place until such time that a second punishment is imposed for the same crime at the time of a supervised release revocation. It is not the imposition of supervised release itself that violates double jeopardy, but rather the revocation of supervised release, and imposing a new judgment for the same crime, that violates double jeopardy

## B. The Imposition Of A Second Prison Term For The Original Crime At The Time Of a Supervised Release Revocation Violates Double Jeopardy.

Case -law has firmly established that a punishment on a supervised release revocation is punishment for the original crime and not acts that constituted supervised release violations. *Johnson v. United States*, 529 U.S. 694, 700 (2000). But, particularly here, where Mr. Simpson is made subject to lifetime release, this

cannot square with the double jeopardy clause. The Double Jeopardy Clause

protects not only against multiple prosecutions for the same offense, but also

"against multiple punishments for the same offense*." North Carolina v. Pearce*,

395 U.S. 711, 717 (1969), overruled on other grounds by *Alabama v. Smith,* 490

U.S. 794, 798 (1989); see also *Ex parte Lange*, 85 U.S. 163, 173 (1873) ("[T]he

Constitution was designed as much to prevent the criminal from being twice

punished for the same offence as from being twice tried for it."). Given that post-

revocation penalties are not imposed as part of the original prosecution, courts

attribution of those penalties to the original conviction runs afoul of the

constitutional prohibition against multiple punishments for the same offense.[11]

   Changes to the supervised release statute since the time of *Johnson* establish

that a Supervised Release violation now constitutes a second punishment for the

same crime. Specifically, and as explained previously (see Pt. I, Supra), at the time

*Johnson* was decided, the statute did not provide for imposition of a new term of

supervised release on revocation and the court thus did not interpret the word

---

[11]In the Sentencing Reform Act, Congress "forbade the federal courts from
'modify[ing] a term of imprisonment once it has been imposed.'" *United States v.
Jones*, 980 F.3d 1098, 1103–04 (6th Cir. 2020) (quoting Sentencing Reform Act of
1984, Pub. L. No. 98–473, tit. II, ch. 2, § 212(a), 98 Stat. 1987, 1998). To avoid
constitutional problems, when courts are authorized to modify sentences, they are
limited to reducing sentences. See 18 U.S.C. § 3582(c).

Appellate Case: 24-2575      Page: 44      Date Filed: 02/26/2025 Entry ID: 5489944

"revoke" as ending a term of supervised release. When one was revoked, and served a sentence, one remained on the original supervised release, indicating that the sentence being served was part of the original sentence. However, the introduction of §3583(h) made clear that when a term of release was revoked, and a sentence was imposed, a new supervised release term was also imposed, making the sentence a new sentence, rather than part of the original one. Although still considered the sentence for the original crime, the new sentence, including any new term of supervised release, is a different sentence.

Nor does the *Missouri v. Hunter* exception apply here. The rule of *Hunter* was stated by the Supreme Court as follows: "Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." 459 U.S. 359, 368–69 (1983). But this situation is not one where multiple punishments were imposed "in a single trial." Rather, the lifetime supervised release imposed in this case subjects Mr. Simpson to jeopardy over and over again for the same crime at separate times, in separate court proceedings, years apart. A primary purpose served by the double jeopardy provision is to uphold the finality of judgments. *See Yeager v. United States*, 557 U.S. 110, 118,

Appellate Case: 24-2575    Page: 45    Date Filed: 02/26/2025 Entry ID: 5489944

(2009). Lifetime supervised release "compel[s a Defendant] to live in a continuing state of anxiety and insecurity," (*Id.*) not knowing when he will be punished again for a crime long past, and for which he has already served his prison sentence . Protecting against this is a primary purpose of the double jeopardy clause, and the "single trial" language of *Missouri v. Hunter* cannot be taken out of the *Hunter* exception without severely offending that right.

When analyzing legislative intent, it must be noted too that the crime for which Mr. Simpson was originally convicted is one of the few crimes for which the authorized term of supervised release is greater than the maximum term of imprisonment of 20 years. Had the legislature wanted to authorize a sentence of imprisonment for life, it would have used clear language to say so, rather than subjecting a person to supervised release for that period of time. This clearly was not the legislature's intent.

The double jeopardy clause prohibited the Court from imposing another sentence of imprisonment on a supervised release violation.

## CONCLUSION

Wherefore, for the foregoing reasons, Mr. Simpson respectfully requests that the decisions of the district court be reversed, and the case be remanded for further proceedings consistent with this Court's opinion.

Respectfully submitted,

/s/ Kathryn B. Parish
Kathryn B. Parish
Carlyle Parish LLC
3407 Jefferson, #128
St. Louis, MO 63118
(816) 525-6540
FAX (866) 764-1249
Missouri Bar No. 61781
Kay@carlyleparishlaw.com
ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. Pro. 32(a)(7)(B), the undersigned attorney certifies that this brief complies with the type-volume limitation in that rule in that the brief was prepared using Times New Roman font, size 14. According to Microsoft Word 365, the word processing program used to produce this brief, it contains 9127 words.

/s/ Kathryn B. Parish
_____
KATHRYN B. PARISH

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing brief was filed on this date using this Court's electronic filing system, to be served by operation of that system on all attorneys of record.

/s/ Kathryn B. Parish
_____
KATHRYN B. PARISH