**Nos. 24-2575 and 24-2576**
*Criminal*

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

*UNITED STATES OF AMERICA*

*Plaintiff–Appellee*

*v.*

**KENNETH SIMPSON**

*Defendant–Appellant*

Appeal from the United States District Court
for the Eastern District of Missouri

**BRIEF OF APPELLEE**

**MATTHEW T. DRAKE**
**Acting United States Attorney**

**JONATHAN A. CLOW**
**Assistant United States Attorney**
**Thomas F. Eagleton U.S. Courthouse**
**111 South Tenth Street, 20th Floor**
**Saint Louis, Missouri 63102**
**(314) 539-2200**

## SUMMARY OF THE CASE

Appellant Kenneth Simpson was required to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA) by virtue of his conviction for a federal child-pornography offense. Since completing his prison sentence for this offense, Simpson has refused to register as required by SORNA and the conditions of his supervised release. After three revocations of his supervised release and his refusal to register a fourth time, Simpson was charged and convicted of violating SORNA, and his supervised release was revoked once more.

On appeal, Simpson challenges the constitutionality of SORNA, alleging Congress lacks constitutional authority to apply SORNA to him; the substantive reasonableness of his 60-month sentence for his SORNA conviction; the substantive reasonableness of lifetime supervision reimposed upon the fourth revocation of his supervised release; and the constitutionality of the supervised release statute. Contrary to Simpson's claims, his constitutional arguments are foreclosed by precedent, and his sentences were well within the district court's discretion based on his history.

The United States does not believe that oral argument is necessary in this case. The issues raised can be addressed by review of the record and application of existing law. However, should the Court grant Appellant's request for oral argument, the United States respectfully requests an equal amount of time to respond.

Appellate Case: 24-2575     Page: 2     Date Filed: 06/23/2025 Entry ID: 5529387

# TABLE OF CONTENTS

**Page No.**

SUMMARY OF THE CASE................................................................... i

TABLE OF CONTENTS...................................................................... ii

TABLE OF AUTHORITIES ..................................................................v

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF THE CASE................................................................3

SUMMARY OF THE ARGUMENT ....................................................21

ARGUMENT .....................................................................................24

    I.   The district court did not err in denying Simpson's motion to dismiss the indictment where his constitutional challenges of SORNA were foreclosed by precedent. ...................................24

        A.  Standard of Review ........................................................24

        B.  SORNA's registration requirements and criminal penalties are a valid exercise of Congress's power under the Commerce and Necessary and Proper Clauses to regulate child pornography...............................................25

        C.  SORNA's registration requirements, even as applied to purely intrastate sex offenders, are a valid exercise of Congress's power under the Commerce and Necessary and Proper Clauses to regulate interstate movement of sex offenders...........................................................................31

        D.  The district court did not plainly err for not sua sponte dismissing the indictment on Due Process grounds..........................32

    II.  The district court did not abuse its discretion by varying upward and sentencing Simpson to 60 months' imprisonment

Appellate Case: 24-2575    Page: 3    Date Filed: 06/23/2025    Entry ID: 5529387

for his SORNA conviction considering his multiple, repeated
refusals to register as a sex offender. .......................................34

    A.  Standard of Review ........................................................35

    B.  The district court did not abuse its discretion by varying
upward based on Simpson's repeated refusals over a
decade to register as a sex offender and to submit to
supervision.................................................................37

    C.  The district court did not commit plain error or otherwise
abuse its discretion in not considering JSIN data. ............41

III. The district court did not err or otherwise abuse its discretion
in imposing a new lifetime term of supervised release as had
been imposed following his original conviction and three
previous revocations. ...................................................42

    A.  Standard of Review ........................................................43

    B.  The district court did not procedurally commit plain error
or otherwise abuse its discretion by properly considering
the applicable sentencing factors and identifying facts
relevant to those factors.................................................43

    C.  The district court based its presumptively reasonable
revocation sentence only on permissible factors, and thus
neither plainly erred nor abused its discretion. ..................45

    D.  The district court did not abuse its discretion by imposing
a presumptively reasonable sentence in light of Simpson's
history of refusing to comply with his conditions of
supervision.................................................................50

IV. The supervised release statute does not violate the Double
Jeopardy Clause.........................................................52

    A.  Simpson's constitutional challenge to the supervised
release statute is an unreviewable collateral attack on his
underlying conviction....................................................52

    B.  In any event, revocation of supervised release does not
violate the Double Jeopardy Clause..................................54

iii

CONCLUSION ...................................................................................................55

CERTIFICATE OF COMPLIANCE.......................................................................56

CERTIFICATE OF SERVICE ...............................................................................57

iv

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Carr v. United States*, 560 U.S. 438 (2010)................................................27

*Champion v. Ames, (Lottery Case)*, 188 U.S. 321 (1903) .......................26

*FCC v. Beach Communications, Inc.*, 508 U.S. 307 (1993)....................33

*Gonzales v. Raich*, 545 U.S. 1 (2005)............................................... 31, 37

*Gunderson v. Hvass*, 339 F.3d 639 (8th Cir. 2003)...................................33

*Heller v. Doe*, 509 U.S. 312 (1993) ..........................................................33

*Holguin-Hernandez v. United States*, 589 U.S. 169 (2020) ....................35

*Johnson v. United States*, 529 U.S. 694 (2000) .......................................54

*Reynolds v. United States*, 565 U.S. 432 (2012).......................................33

*Sabri v. United States*, 541 U.S. 600 (2004).............................................27

*Simpson v. United States*, No. 4:11-CV-02058-RWS, 2013 WL
  1490462 (E.D. Mo. April 11, 2013)...............................................5, 47

*Smith v. Doe*, 538 U.S. 84 (2003) .............................................................34

*United States v. Anderson*, 771 F.3d 1064 (8th Cir. 2014).......................31

*United States v. Asalati*, 615 F.3d 1001 (8th Cir. 2010)................... 46, 50

*United States v. Bennett*, 561 F.3d 799 (8th Cir. 2009)..........................1, 54

*United States v. Booker*, 63 F.4th 1254 (10th Cir. 2023) .........................49

*United States v. Bowman*, No. 23-1952, 2023 WL 7153255 (8th Cir.
  Oct. 31, 2023)........................................................................................53

Appellate Case: 24-2575    Page: 6    Date Filed: 06/23/2025 Entry ID: 5529387

*United States v. Brune*, 767 F.3d 1009 (10th Cir. 2014) .............................. 1, 28, 29

*United States v. Clark*, 998 F.3d 363 (8th Cir. 2021).................................... passim

*United States v. Cloud*, 956 F.3d 985 (8th Cir. 2019) ...............................35

*United States v. Comstock*, 560 U.S. 126 (2010)...................................... 26, 27, 32

*United States v. Coppock*, 765 F.3d 921 (8th Cir. 2014)...................... 1, 26, 28, 32

*United States v. David*, 682 F.3d 1074 (8th Cir. 2012) ......................... 1, 38, 39, 40

*United States v. Davies*, 380 F.3d 329 (8th Cir. 2004)...........................52

*United States v. DeMarrias*, 895 F.3d 570 (8th Cir. 2018) ....................44

*United States v. Dull*, 641 F. App'x 669 (8th Cir. 2016)...........................49

*United States v. Eagle Chasing*, 965 F.3d 647 (8th Cir. 2020) ..............53

*United States v. Elk Shoulder*, 738 F.3d 948 (9th Cir. 2013) ................29

*United States v. Esteras*, 606 U.S. ---, 2025 WL 1716137 (June 20, 2025)................................................................................. 1, 47, 48, 49

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009) ...................................1, 36

*United States v. Floss*, 42 F.4th 854 (8th Cir. 2022) ...............................25

*United States v. Freeman*, 964 F.3d 774 (8th Cir. 2020)........................30

*United States v. Gall*, 552 U.S. 38 (2007) ................................................. 1, 36, 42

*United States v. Gasaway*, 684 F.3d (8th Cir. 2012) ...............................41

*United States v. Giboney*, 863 F.3d 1022 (8th Cir. 2017) ......................28

*United States v. Guzman*, 591 F.3d 83 (2d Cir. 2010)............................32

*United States v. Hall*, 931 F.3d 694 (8th Cir. 2019).......................... 38, 48

*United States v. Haymond*, 588 U.S. 634 (2019)................................. 15, 16, 52, 53

Appellate Case: 24-2575    Page: 7    Date Filed: 06/23/2025 Entry ID: 5529387

*United States v. House*, 501 F.3d 928 (8th Cir. 2007)..........................................2, 54

*United States v. Howell*, 552 F.3d 709 (2009)..........................................................31

*United States v. Hummingbird*, 743 F.3d 636 (8th Cir. 2014) ...............................36

*United States v. Hyman*, 665 F. App'x 44 (2d Cir. 2016) .......................................29

*United States v. Isler*, 983 F.3d 335 (8th Cir. 2020)..........................................38, 40

*United States v. Johnson*, 827 F.3d 740 (8th Cir. 2016).................................. passim

*United States v. Juvenile Male*, 670 F.3d 999 (9th Cir. 2012) ...............................34

*United States v. Kebodeaux*, 570 U.S. 387 (2013) ........................................... passim

*United States v. Kimball*, 830 F.3d 747 (8th Cir. 2016) .....................................1, 50

*United States v. Kreitinger*, 576 F.3d 500 (8th Cir. 2009) .....................................39

*United States v. Larison*, 432 F.3d 921 (8th Cir. 2006).........................................46

*United States v. Louper-Morris*, 672 F.3d 539 (8th Cir. 2012) ..............................24

*United States v. Luscombe*, 950 F.3d 1021 (8th Cir. 2020)....................................41

*United States v. Manual*, 73 F.4th 989 (8th Cir. 2023) ..........................................40

*United States v. Mejia-Perez*, 635 F.3d 351 (8th Cir. 2011) ..................................39

*United States v. Melton*, 666 F.3d 513 (8th Cir. 2012)...........................................50

*United States v. Miller*, 557 F.3d 910 (8th Cir. 2009) ............................. 2, 8, 11, 52

*United States v. O'Connor*, 567 F.3d 395 (8th Cir. 2009)......................................36

*United States v. Orr*, No. 23-2633, 2024 WL 1070071 (8th Cir. Mar. 12, 2024) ...............................................................................................................53

*United States v. Phillips*, 785 F.3d 282 (8th Cir. 2015).........................................43

*United States v. Porter*, 974 F.3d 905 (8th Cir. 2020)...........................................48

Appellate Case: 24-2575     Page: 8     Date Filed: 06/23/2025 Entry ID: 5529387

*United States v. Richart*, 662 F.3d 1037 (8th Cir. 2011) ........................................36

*United States v. Saddler*, 538 F.3d 879 (8th Cir. 2008)............................................36

*United States v. Simpson*, 448 F. App'x 640 (8th Cir. 2011) ....................................4

*United States v. Simpson*, 653 F. App'x 850 (8th Cir. 2016) ................ 8, 13, 14, 52

*United States v. Simpson*, 704 F. App'x 609 (8th Cir. 2017) .................... 11, 13, 52

*United States v. Simpson*, 932 F.3d 1154 (8th Cir. 2019) ................... 13, 39, 52, 53

*United States v. Smith*, 655 F.3d 839 (8th Cir. 2011).............................................30

*United States v. Taylor*, 864 F.3d 851 (8th Cir. 2017) ...........................................38

*United States v. Thomas*, No. 22-2766, 2023 WL 6459014 (8th Cir. Oct. 4, 2023)...............................................................................................53

*United States v. Thompson*, 811 F.3d 717 (5th Cir. 2016) ..................................1, 29

*United States v. Washington*, 515 F.3d 861 (8th Cir. 2008)....................................39

*United States v. White*, 816 F.3d 976 (8th Cir. 2016).............................................35

*United States v. Williamson*, 782 F.3d 397 (8th Cir. 2015)....................................41

*United States v. Wilson*, 939 F.3d 929 (8th Cir. 2019)...........................................53

*United States v. Winston*, 850 F.3d 377 (8th Cir. 2017).........................................24

*United States v. Yelloweagle*, 643 F.3d 1275 (10th Cir. 2011) ..............................32

**Statutes**

18 U.S.C. § 2250(a) ................................................................................ passim

18 U.S.C. § 2252A ..................................................................................3, 28

18 U.S.C. § 3553(a) ................................................................................ passim

18 U.S.C. § 3583 ..................................................................................... passim

Appellate Case: 24-2575    Page: 9    Date Filed: 06/23/2025 Entry ID: 5529387

28 U.S.C. § 2255 ..................................................................................4

34 U.S.C. § 20901 ...............................................................................4

34 U.S.C. § 20913 ........................................................................ 31, 32

Appellate Case: 24-2575     Page: 10     Date Filed: 06/23/2025 Entry ID: 5529387

## STATEMENT OF ISSUES

**I.**    **Whether the district court erred, plain or otherwise, by denying Simpson's motion to dismiss the indictment where his constitutional challenges to SORNA were foreclosed by precedent.**

*United States v. Kebodeaux*, 570 U.S. 387 (2013)

*United States v. Coppock*, 765 F.3d 921 (8th Cir. 2014)

*United States v. Brune*, 767 F.3d 1009 (10th Cir. 2014)

*United States v. Thompson*, 811 F.3d 717 (5th Cir. 2016)


**II.**    **Whether the district court plainly erred or abused its considerable discretion by varying upward and sentencing Simpson to 60 months' imprisonment for failing to register as a sex offender considering his multiple, repeated refusals to register as a sex offender.**

*United States v. Gall*, 552 U.S. 38 (2007)

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009)

*United States v. David*, 682 F.3d 1074 (8th Cir. 2012)


**III.**    **Whether the district court plainly erred or abused its considerable discretion by reimposing a presumptively reasonable life term of supervision following Simpson's fourth revocation of supervised release.**

*United States v. Esteras*, 606 U.S. ---, 2025 WL 1716137 (June 20, 2025)

*United States v. Johnson*, 827 F.3d 740 (8th Cir. 2016)

*United States v. Kimball*, 830 F.3d 747 (8th Cir. 2016)


**IV.**    **Whether the supervised release statute violates the Double Jeopardy Clause.**

*United States v. Bennett*, 561 F.3d 799 (8th Cir. 2009)

1

*United States v. House*, 501 F.3d 928 (8th Cir. 2007)

*United States v. Miller*, 557 F.3d 910 (8th Cir. 2009)

Appellate Case: 24-2575    Page: 12    Date Filed: 06/23/2025 Entry ID: 5529387

# STATEMENT OF THE CASE

Simpson's claims on appeal relate to the fourth revocation of his supervised release following his original conviction for receipt of child pornography in Case No. 4:10-CR-00169-RWS ("10R. Doc.") and his sentencing after he was convicted of failing to register as a sex offender in Case No. 4:23-CR-00297-RLW ("23R. Doc.").

## I. Simpson's 2011 Conviction for Receipt of Child Pornography and Imposition of Supervised Release

In 2011, Simpson pleaded guilty to receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), after a police investigation revealed he used a file-sharing program to download child pornography. 10R. Doc. 60. The charge carried an imprisonment range of 5 to 20 years and subjected Simpson to a term of supervised release of five years to life. 18 U.S.C. § 2252A(b)(1); 18 U.S.C. § 3583(k). As part of his Guilty Plea Agreement, Simpson acknowledged that the district court would impose a term of supervised release following incarceration and may impose special conditions of release, including that Simpson be "required to comply with all sex offender registration laws." 10R. Doc. 60 at 12. Simpson further acknowledged that, if he violated the terms of his supervised release, his release may be revoked and he may be required to serve an additional term of imprisonment for his underlying offense. *Id.* at 12–13.

3

District Judge Rodney W. Sippel sentenced Simpson to the mandatory minimum sentence of 5 years, followed by a lifetime term of supervised release. 10R. Doc. 71. When pronouncing the sentence, Judge Sippel advised that the supervised release could be terminated early "if you show through your conduct after you're released that you're able to abide by the conditions of release and are able to conform to the expectations of society." 10R. Doc. 80 at 9. Judge Sippel also advised Simpson of his conditions of supervised release, including that he "comply with all federal, state, and local sex offender registration laws and provide verification of registration to the probation office." *Id.* at 10. Because of his conviction, Simpson was required under the Sex Offender Registration and Notification Act (SORNA) to register as a sex offender in each jurisdiction where he resided and to keep his registration current. *See* 34 U.S.C. § 20901 *et seq.*[1] Simpson did not object to the imposition of supervised release, the conditions of supervised release, or the manner in which Judge Sippel pronounced the sentence. *Id.* at 13.

Simpson appealed his conviction to this Court, alleging *inter alia* ineffective assistance of counsel. *United States v. Simpson*, 448 F. App'x 640 (8th Cir. 2011). Simpson subsequently sought post-conviction relief pursuant to 28 U.S.C. § 2255.

---

[1] At the time of Simpson's sentencing, SORNA was codified at 42 U.S.C. § 16901 *et seq.*

Appellate Case: 24-2575   Page: 14   Date Filed: 06/23/2025 Entry ID: 5529387

*Simpson v. United States*, No. 4:11-CV-02058-RWS, 2013 WL 1490462 (E.D. Mo. April 11, 2013). Relevant to this appeal, Simpson first argued SORNA was unconstitutional and supervised release violates the Double Jeopardy Clause years later in an unauthorized successive § 2255 motion. *Simpson v. United States*, No. 4:14-CV-00392-RWS, Doc. 1 at 37–41 (E.D. Mo. Feb. 28, 2014). The district court dismissed the action without prejudice, as Simpson had not obtained permission from this Court to file a second, successive petition. *Id.*, Doc. 3.

## II. 2015 Revocation for Refusing to Register

In advance of Simpson's release from Bureau of Prisons custody in 2015, Judge Sippel held a status conference after learning that Simpson was refusing to register as a sex offender. 10R. Doc. 94. Judge Sippel spoke with Simpson about his willingness to follow the conditions of supervised release. 10R. Doc. 324 at 1–2. At the hearing, Simpson agreed to register as a sex offender and adhere to the conditions of supervised release. *Id.* at 2.

Nonetheless, days later when Simpson began supervised release, Simpson told his U.S. Probation Officer that he would not register as a sex offender. 10R. Doc. 96. The U.S. Probation Office filed a petition to revoke his supervised release based on this refusal. *Id.* On December 9, 2015, Judge Sippel held a supervised release revocation hearing. 10R. Doc. 112. Simpson admitted violating his conditions of release by refusing to follow his Probation Officer's instructions to register as a sex

offender.  10R. Doc. 118 at 3.  However, at the hearing, Simpson objected to the revocation hearing and argued that he did not register because 1) the district court lacked jurisdiction for his child-pornography case, 2) supervised release violated the Double Jeopardy Clause, and 3) Simpson intended to challenge his requirement to register in the State of Missouri.  *Id.* at 3–4.

Judge Sippel overruled those objections, *id.* at 7–8, and then addressed Simpson's failure to register as a sex offender as required by the conditions of his supervised release:

> So based on the violation – and we're here simply because you failed to – and refuse and continue to fail and refuse to register as a sex offender as required by your original sentence.  That's a willful act on your part.  No one else is imposing, causing, or otherwise putting you in a situation that brings you to this moment.  No one takes any satisfaction in bringing you to this moment other than your own willful – and you've written me and the Court of Appeals that you have no intention of complying with the conditions of your release.  And that's fine.  Those are your choices.  But we all have to live with the choices we make at some point.

*Id.* at 9.  Judge Sippel provided Simpson and his attorney an opportunity to address the court.  During those discussions, it was apparent that Simpson had been given the opportunity to register and had chosen to not do so.  *Id.* at 11–12.  Judge Sippel concluded that Simpson had shown "a total lack of respect for the law, disregard for the Court's authority, and an intentional, willful decision not to comply with the law."  *Id.* at 16.  Judge Sippel then found that Simpson had violated the conditions

6

of supervised release, revoked his supervision, and sentenced him to 12 months' imprisonment, an upward variance from the Guidelines range, to be followed by a lifetime term of supervised release.  10R. Doc. 113.

After Judge Sippel imposed its sentence, Simpson's attorney objected to the upward variance, arguing a variance was not supported by the relevant sentencing factors.  Judge Sippel addressed counsel's arguments:

> I would generally agree with you, but his insistence that the law doesn't apply to him demands something other than a garden-variety guidelines sentence.
>
> . . .
>
> And his continued insistence that these matters don't apply to him is, of course, deeply troubling, and it is a public safety issue.  And I don't know what to do to get his attention.  I would hope that a reasonable consultation would be sufficient, but it has not been.  I mean, you're very – you're a very, very good lawyer, and I have no doubt you've informed him as to what the consequences are of his conduct; and he's elected, nonetheless, to ignore that advice, ignore the law, and proceed as we have here today.
>
> . . .
>
> [H]e's elected to pursue a course that is very serious.  The seriousness of the offense here is, is a failure to comply with state, federal, and local law, to tell the Court and everyone else where that he intends to continue to fail to follow federal, state, and local law, and shows no remorse whatsoever for his conduct.

10R. Doc. 118 at 21–23.

7

Simpson appealed the district court's revocation of his supervised release and his 12-month sentence. *United States v. Simpson*, 653 F. App'x 850 (8th Cir. 2016) (*per curiam*). Simpson raised multiple claims on appeal, including that revocation of his supervised release resulted in double jeopardy and was thus unconstitutional. *Id.* at 851. This Court denied all grounds raised. *Id.* As to his double jeopardy claim, the Court held "Simpson's challenges regarding jurisdiction and double jeopardy amount to improperly raised collateral attacks on his underlying conviction and sentence." *Id.* at 851 (citing *United States v. Miller*, 557 F.3d 910, 913 (8th Cir. 2009)).

## III. 2016 Revocation for Refusing to Register

In 2016, Simpson began his second term of supervised release and reported to a residential re-entry center, as ordered by the district court. 10R. Doc. 128 at 1. Upon his arrival at the center, Simpson's probation officer directed him to register as a sex offender. *Id.* at 1–2. Simpson refused and told the officer he would not register as a sex offender. *Id.* at 2. Days later, the officer again spoke to Simpson about his refusal to register, and Simpson stated that "he refuses to register as a sex offender as he believes the sex offender registry is unconstitutional and he will also be challenging his conviction." *Id.* The U.S. Probation Office subsequently filed a second petition to revoke Simpson's supervised release based his refusal to register. *See id.*

8

A final supervised release revocation hearing was held before Judge Sippel on November 21, 2016. 10R. Doc. 143. Judge Sippel heard testimony from the probation officer regarding Simpson's violations, namely his refusal to register as a sex offender. 10R. Doc. 148 at 4–16. Judge Sippel found by a preponderance of the evidence that Simpson violated his conditions of supervised release by failing to register as a sex offender as required by state and federal law and as directed by his probation officer. *Id.* at 16–17.

Following allocution, *id.* at 17–24, Judge Sippel addressed the sentence:

> Well, Mr. Simpson has obviously violated the conditions of his supervised release and does not understand the nature of supervised release or the consequences of violating his supervised release and has a continued lack of respect for the law, a lack of respect for this Court's orders, and thinks that if violating supervised release the reward should ultimately be not to be subject to the Court's orders. That should be – the outcome of not complying with the Court's orders is for the Court to give up.
>
> The Court has a duty to protect the people of the United States and to follow the laws –
>
> . . .
>
> So it is my finding that supervised release has been violated, and I'm going to impose a sentence of 18 months followed by a term of supervision for the rest of your life.

*Id.* at 24–25. Simpson responded, "And we both know I'm not going to comply with that." *Id.* at 25.

9

After Judge Sippel announced the sentence, Simpson's attorney objected to the court's sentence, arguing that it was an unwarranted upward variance and was not supported by the sentencing factors. *Id.* at 29–30. Judge Sippel responded that the sentence reflected the "seriousness of the offense and Mr. Simpson's consistent failure to follow the conditions of release." *Id.* at 30. The district court continued:

> To afford deterrence. Such conduct cannot be rewarded for Mr. Simpson or others similarly situated.
>
> Protect the public. That's one of the more fundamental issues present here. The requirement established by both the state legislature and the United States congress, believing that a public has a right to know. The circumstances surrounding Mr. Simpson cannot be avoided simply by recalcitrance and stubbornness and cannot be rewarded with a lack of additional term of supervised release because he won't do what the law asks of him.
>
> I have complied with the admonition to provide whatever appropriate treatment or training would be helpful.
>
> And while I do understand that it is an upward departure, we do know that a sentence of 12 months in the previous term of supervised release revocation was not sufficient for Mr. Simpson to understand the seriousness of his offense, and the only natural and logical consequence is something else needed to be done differently. So here we are.

*Id.* at 30–31.

Simpson appealed again to this Court. This Court allowed Simpson to file a *pro se* brief, in which he argued (1) SORNA is unconstitutional and (2) supervised

10

release violates the Double Jeopardy Clause. *United States v. Simpson*, No. 16-4498 (8th Cir. brief filed July 10, 2017). This Court, in denying Simpson's appeal, again held that "Simpson's jurisdictional and double-jeopardy arguments amount to collateral attacks on his conviction and sentence." *United States v. Simpson*, 704 F. App'x 609, 609 (8th Cir. 2017) (citing *Miller*, 557 F.3d at 913)).

## IV. 2018 Revocation for Refusing to Register and Absconding

In 2018, Simpson was released from the custody of the Bureau of Prisons and directed to report to a residential reentry center, per his conditions of supervised release. 10R. Doc. 161 at 1. Given money and directions to travel from Springfield, Missouri, to St. Louis, Simpson instead absconded. *Id.* at 1–2. After arriving in St. Louis, Simpson reported to neither the reentry center nor his probation officer. *Id.* at 2. Following Simpson's disappearance, the U.S. Probation Office filed a third petition to revoke his supervised release. *Id.*

Simpson was arrested on February 23, 2018, and a final supervised release revocation hearing occurred on March 28, 2018, before Judge Sippel. 10R. Doc. 178. Simpson admitted that he did not report to the RRC as directed and violated his conditions of release. 10R. Doc. 192 at 4–5. Nonetheless, Simpson proceeded to justify his absconding by, again, arguing that his term of supervised release was unconstitutional and violated double jeopardy. *Id.* at 5–6. The district court responded:

> Well, the violation of supervised release under well-settled case law – and I should let the U.S. Attorney make this argument. But the fact of the matter is, the revocation and sentencing on supervised release is considered a part of the original sentence. It is not a new and different sentence. It is a continuation of the original sentence.

*Id.* at 11.

Simpson then argued that any sentence following revocation of his supervised release was unwarranted. *Id.* at 16–17. In particular, Simpson claimed that he had "fully complied" and had not "flaunted" the district court's orders in his two prior revocations because he believed he was not required to register and intended to challenge that requirement. *Id.* at 18–19. Judge Sippel responded that, this time, "the most basic requirements remain unsatisfied" because Simpson absconded. *Id.* at 20. Judge Sippel then concluded:

> So what I have before me really, at the end of the day, is a pretty simple question: Whether or not you complied with the conditions of supervised release that were imposed by the Court now on, I believe, three separate occasions.
>
> . . .
>
> Now, while the guidelines recommend a period of incarceration of three to nine months, what I do observe is on each prior occasion, on the first time you failed to comply with supervised release, I imposed a sentence of 12 months. The second time you failed to comply with supervised release, I imposed a sentence of 18 months. Neither of those sentences seem to have created the impression that I hope would have been served by those sentences.

Appellate Case: 24-2575     Page: 22     Date Filed: 06/23/2025 Entry ID: 5529387

> And as a result – because one of the criteria under the sentencing statute is respect for the law and protect the public and general deterrence – I will impose a sentence today of 24 months – followed by a lifetime of supervision, consistent with the prior court orders.

*Id.* at 20–21. The district court revoked his release and sentenced him to 24 months' incarceration, followed by lifetime supervision. *Id.* at 21.

Simpson again appealed, raising the same arguments he made before, including that revocation of his supervised release resulted in double jeopardy. *United States v. Simpson*, 932 F.3d 1154, 1156 (8th Cir. 2019). In addressing his double jeopardy argument, this Court "decline[d] to consider Simpson's arguments that supervised release and revocation violate double-jeopardy principles and inhibit reintegration into society . . . . These arguments have been considered and rejected by this court on direct appeals from Simpson's prior revocations." *Id.* (citing *Simpson*, 704 F. App'x 609 and *Simpson*, 653 F. App'x 850).

## V. 2024 Conviction for Failure to Register and Fourth Revocation

Simpson was scheduled to be released from the Bureau of Prisons in Springfield, Missouri, on November 7, 2019. 10R. Doc. 203 at 2. Simpson was once again directed to report to a RRC and was provided with money to travel to the RRC. *Id.* As before, Simpson failed to report to the RRC as directed and did not notify the U.S. Probation Office of his whereabouts. *Id.* The Probation Office filed

13

a petition seeking revocation of Simpson's supervised release, and the district court issued a warrant for Simpson's arrest. *Id.*

After absconding from supervision for over three years, Simpson was located and arrested by the U.S. Marshal Service at a residence in St. Louis, Missouri, in 2023. 10R. Doc. 242 at 2. At the time of his arrest, Simpson was found to be in possession of a smartphone,[2] and a subsequent search of the residence located multiple electronic devices belonging to Simpson. *Id.* at 3–7. Forensic examination of the devices uncovered evidence that Simpson had accessed the Internet and visited pornographic websites.[3] *Id.* at 6–7. The Probation Office subsequently filed an amended petition alleging Simpson violated several conditions of his supervised release, including the mandatory condition that he comply with all sex offender registration and notification requirements and multiple special conditions restricting his access to electronic devices, restricting his access to the Internet, and prohibiting his viewing of sexually explicit conduct. *Id.* at 1–7.

On June 7, 2023, a grand jury in the Eastern District of Missouri returned an indictment charging Simpson with failing to register as a sex offender, in violation

---

[2] Simpson refused to provide the passcode for the device. 10R. Doc. 242 at 3–4.

[3] The Probation Office was unable to examine all the devices. In particular, due to technical issues, examination was not completed of a laptop computer that was found on a desk next to Simpson's bed, and for which the user was "KS." *Id.* at 5–6. For similar reasons, no data was extracted from an iPhone found on Simpson's nightstand. *Id.*

Appellate Case: 24-2575     Page: 24     Date Filed: 06/23/2025 Entry ID: 5529387

of the 18 U.S.C. § 2250(a). 23R. Doc. 1. The case was assigned, and the pending supervised release revocation was reassigned, to the District Judge Ronnie L. White.[4] 10R. Doc. 220.

Simpson filed numerous *pro se* motions in advance of trial and revocation hearing.[5] Two motions are relevant to this appeal: First, Simpson filed a motion to dismiss the indictment, challenging the constitutionally of Section 2250(a). 23R. Doc. 26. In his motion, Simpson argued that Congress lacked the authority under the Constitution to apply SORNA to him, as there was no general "federal police power" and his failure to register was purely intrastate conduct. *See id.* at 2–4.[6] Second, Simpson filed a motion to dismiss the petition to revoke his supervised release because the supervised release statute was unconstitutional, citing the Supreme Court's decision in *United States v. Haymond*, 588 U.S. 634 (2019). 10R. Doc. 226.

After the issues were fully briefed,[7] the magistrate judge issued a Report and Recommendation ("R&R") recommending that the district court deny all of

---

[4] Judge White retired on July 31, 2024.

[5] Simpson was originally allowed to represent himself in both matters. 10R. Doc. 247; 23R. Doc. 58.

[6] Simpson raised these same arguments or related arguments challenging the constitutionality of SORNA in other motions as well. *See* 23R. Docs. 16, 20, 23.

[7] The magistrate judge held an evidentiary hearing on Simpson's pretrial motions. 23R. Doc. 53. The testimony at this hearing pertained to motions not relevant to this appeal. *See* 23R. Doc. 184.

Appellate Case: 24-2575    Page: 25    Date Filed: 06/23/2025 Entry ID: 5529387

Simpson's motions. 23R. Doc. 69. As to his motion challenging SORNA's constitutionality, the R&R stated that "[c]hallenges to the constitutionality of SORNA have been consistently rejected by the Eighth Circuit" and cited numerous cases of this Court upholding SORNA's constitutionality. *Id.* at 11–12. Regarding the constitutionality of supervised release, the R&R likewise stated that "[t]he Eighth Circuit has denied [Simpson's] argument in multiple cases." 23R. Doc. 69 at 11. The district court adopted the R&R and entered an order denying Simpson's motions. 23R. Doc. 104 at 4–5.

Before trial, Simpson requested the assistance of counsel, and the district court reappointed counsel to represent him. 23R. Doc. 99. A single-day jury trial was held on April 22, 2025. 23R. Doc. 136. At trial, the United States called Simpson's former probation officers to testify about his refusals to register as a sex offender while on supervised release and his eventual absconding. 23R. Doc. 187 at 95–103, 106–14, and 124–31. The jury found Simpson guilty of failing to register as a sex offender. 23R. Doc. 141.

In advance of sentencing, the U.S. Probation Office filed a Presentence Investigation Report. 23R. Doc. 152 ("PSR"). The PSR set forth Simpson's criminal history and his multiple revocations of supervised release for his child-pornography conviction. PSR, p. 6. The PSR assigned 3 criminal history points to this conviction, *id.*, placing Simpson in Criminal History Category II, *id.*, p. 7, and

16

resulting in a U.S. Sentencing Guidelines range of 12 to 18 months' imprisonment on the failure-to-register conviction, *id.*, p. 11. Probation also filed a Sentencing Computation, calculating Simpson's Guidelines range on the revocation as 4 to 10 months' imprisonment and the range of supervised release of up to life.[8] 10R. Doc. 309. The United States filed a sentencing memorandum, which also recounted Simpson's multiple revocations of supervised release for failing to register, and recommended sentences at the top of the Guidelines ranges based on "defendant's long history of failing to register as a sex offender, and absconding on a third term of supervised release." 23R. Doc. 158 at 2–5, 7.

On July 22, 2024, Simpson appeared before Judge White both for sentencing on his failure-to-register conviction and for final revocation of his supervised release in his child-pornography case. 23R. Doc. 161; 10R. Doc. 311. Simpson represented himself at this joint hearing. 23R. Docs. 159, 161. The district court first took up numerous post-trial motions filed by Simpson, including a Motion to Dismiss arguing SORNA was unconstitutional and Motion for Judgment of Acquittal. 23R. Docs. 143, 149. In arguing the motions, Simpson told the court that he had "never actually failed to register" and claimed, without evidence, that he had been told he

---

[8] Specifically, § 3583(h) authorizes reimposition of supervised release for a term up to the maximum length authorized for the original offense, less any terms of imprisonment imposed upon revocation. Because Simpson's original offense authorized lifetime supervision, the court could impose lifetime supervision upon revocation.

17

was not required to register. 23R. Doc. 187 ("Sent. Tr.") at 7–8. The district court denied all pending motions. Sent. Tr. at 10–11; 23R. Doc. 161.

The district court adopted the PSR and the Guidelines calculations set forth in the PSR and heard argument on the appropriate sentence. Sent. Tr. at 12. Simpson requested a sentence of time served and no supervised release, arguing his actions posed no risk to society and were less serious "than someone drunk driving or, heck, for that matter, even firing a gun at New Year's with reckless endangerment for others." *Id.* at 14. The prosecutor responded that Simpson's actions were dangerous because "we actually don't know [what he did] because he absconded for the long period of time that he did." *Id.* at 15. In support of the Government's recommendation, the prosecutor also pointed to Simpson's prior child-pornography conviction, his "history with failing to register as a sex offender on multiple occasions," and the "increase in the amount of time that the Defendant was receiving" after each revocation. *Id.* at 15–16. The prosecutor concluded by hoping Simpson's sentence "will help deter his insistence that he not have to register and hopefully we won't be back here for a fifth time." *Id.* at 16.

Judge White then imposed an upward variance and sentenced Simpson to 60 months' imprisonment, which the district court found to "be sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)."

*Id.* at 17.  The district court also imposed five years' supervised release.  23R. Doc. 162.

Judge White further explained the basis for the sentence as follows:

> I want to mention to you, Mr. Simpson, that the reason for the upward variance on your case is your continued failure to register.  We haven't gotten your attention the last three times you were here.  Also, when you were out, you were absconding.  You have totally no respect for the law.  So I want you to be clear that the reason why I made a variance upward is because of that.

Sent. Tr. at 20.  Simpson did not object to the manner in which the sentence was pronounced.[9]  *Id.*  In its Statement of Reasons, the district court indicated that its bases for the variance were that the Sentencing Guidelines did not adequately reflect the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment; and the need to afford adequate deterrence to criminal conduct.  23R. Doc. 163 at 3.  In particular, the court described as aggravating "Defendant's repeated refusals and failure to register as a sex offender and his absconding for a period of years while on supervised release, demonstrating his disregard of and contempt for the law."  *Id.*

---

[9] When asked if he had any objections to the manner in which the sentence was pronounced, Simpson responded, "Just the ones I've already stated," referring to his motions.  Sent. Tr. at 20.  None of those motions addressed the court's consideration of the relevant sentencing factors.

Appellate Case: 24-2575     Page: 29     Date Filed: 06/23/2025 Entry ID: 5529387

The district court then turned to the revocation of Simpson's supervised release. Simpson admitted the violations alleged in the Amended Petition. Sent. Tr. 23–26. During allocution, Simpson argued for no further supervision and stated, "I do not believe that this five-year revolving door that you keep doing is legal in any way, shape, or form." *Id.* at 26. In response, the prosecutor pointed out that Judge Sippel had already imposed a term of life on supervised release and noted that "the person who could control the revolving door here would be Mr. Simpson." *Id.*

Judge White then revoked Simpson's supervised release and imposed a sentence of 10 months' imprisonment to be followed by a life term of supervised release. *Id.* at 28; 10R. Doc. 312. Judge White explained the basis for the sentence:

> Based upon Simpson's ongoing blatant defiance of federal, state, and local sex offender registration laws, Simpson's history of violations, the seriousness of the offense, and his refusal to engage in the basic first step of reporting as directed for supervised release, it appears Simpson is not amenable to community supervision at this time.

Sent Tr. at 27. Judge White further explained that he had considered the statutory limits for the underlying offense, the policy statements in the Sentencing Guidelines, and the relevant sentencing factors. *Id.* at 28. Simpson objected only on "*Haymond* grounds," appearing to refer to the constitutionality of supervised release. *Id.* at 35.

Simpson filed timely notices of appeal on August 1, 2024. 23R. Doc. 165; 10R. Doc. 315. This Court consolidated both of Simpson's appeals.

## SUMMARY OF THE ARGUMENT

Simpson challenges his SORNA conviction and supervised release revocation on constitutional grounds, and he alleges his post-conviction and revocation sentences were substantively unreasonable. All of his claims mischaracterize the record, fail as a matter of law, or both.

First, Simpson claims that Congress lacks the constitutional authority to criminalize the failure to register of a "sex offender . . . by reason of conviction under Federal law." 18 U.S.C. § 2250(a)(2)(A). As Congress lacks a general police power, he claims there is no enumerated power that allows Congress to apply SORNA to him by virtue of his federal child-pornography conviction. But under the Supreme Court's decision in *United States v. Kebodeaux*, 570 U.S. 387 (2013), Congress's broad discretion under the Necessary and Proper Clause comes with it the authority to create sex-offender registration requirements and to punish non-conformance with those requirements as rationally related to punishing the offender's underlying offense. Because punishing Simpson's child-pornography offense was a valid exercise of Congress's Commerce Clause power, Congress too can apply SORNA to Simpson.

Second, Simpson claims that the district court abused its discretion by imposing an above-Guidelines sentence of 60 months' imprisonment for his SORNA conviction. In particular, he asserts the court improperly balanced the § 3553(a)

21

factors and failed to consider sentencing disparities with similarly situated defendants. But the district court properly considered Simpson's repeated refusals to register as a sex offender and multiple revocations of his supervised release, none of which deterred him from violating SORNA. In addition, Simpson's forfeited claim about sentencing disparities does not point to sentences of defendants with an equally recidivist history. As such, the district court was well within its discretion to impose the 60-month sentence.

Third, Simpson claims that the district court abused its discretion by re-imposing lifetime supervision upon revocation of his supervised release. Simpson alleges the court procedurally erred and abused its discretion by considering the need to promote respect for law, which is not listed among the § 3583(e) sentencing factors. Simpson further asserts the court abused its discretion by reimposing lifetime supervision after stating Simpson "was not amenable to community supervision at this time." However, the record makes clear the district court based its decision on enumerated § 3583(e) factors such as Simpson's history and characteristics and the need for deterrence. And to the extent the court considered respect for law, such error had no impact on the term of supervision imposed. Finally, the district court was well within its discretion to determine that a term of supervision was warranted based on its assessment of Simpson's non-compliance with supervision.

22

Fourth, Simpson claims that revocation of supervised release violates the Double Jeopardy Clause.  Simpson's claim constitutes an improper collateral attack on his underlying conviction and sentence, and this Court has repeatedly declined to consider it.  In any event, this Court's precedent firmly establishes that supervised release is an extension of the original criminal proceedings and revocation does not amount to a double jeopardy violation.

Appellate Case: 24-2575     Page: 33     Date Filed: 06/23/2025 Entry ID: 5529387

## ARGUMENT

**I.** **The district court did not err in denying Simpson's motion to dismiss the indictment where his constitutional challenges of SORNA were foreclosed by precedent.**

Simpson first raises constitutional challenges to SORNA. Simpson's primary contention is that the provision of SORNA under which he was convicted is not a valid exercise of any of Congress's powers under the Constitution as applied to him, and thus the district court erred in not granting his motion to dismiss. For the first time on appeal, Simpson makes an additional argument that SORNA lacks a rational basis and violates due process. Both of these claims lack merit under binding precedent.

### A. *Standard of Review*

As a general matter, this Court reviews *de novo* the denial of a motion to dismiss an indictment on constitutional grounds. *United States v. Louper-Morris*, 672 F.3d 539, 563 (8th Cir. 2012). However, where appellant fails to raise such error before the district court, this Court instead reviews only for plain error. *United States v. Winston*, 850 F.3d 377, 380 (8th Cir. 2017). Under this exacting standard, appellant must show "'(1) there was an error, (2) the error is clear or obvious under current law, (3) the error affected [his] substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 380. To demonstrate the error affected his substantial rights, appellant "must show

Appellate Case: 24-2575   Page: 34   Date Filed: 06/23/2025 Entry ID: 5529387

a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Floss*, 42 F.4th 854, 862 (8th Cir. 2022) (internal quotation marks omitted).

## B. SORNA's registration requirements and criminal penalties are a valid exercise of Congress's power under the Commerce and Necessary and Proper Clauses to regulate child pornography.

Simpson was convicted of failing to register as a sex offender under 18 U.S.C. § 2250(a), which imposes a sentence up to ten years for whoever:

> (1) is required to register under [SORNA];
>
> (2)(A) is a sex offender as defined [under SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice) . . . ; and
>
> (3) knowingly fails to register or update a registration as required by [SORNA].

18 U.S.C. § 2250(a). Simpson claims that Congress has no authority—even with his underlying federal conviction—to require him to register as a sex offender and to penalize his failure to do so under § 2250(a)(2)(A).[10] Br. at 26–27.

The Supreme Court's decision in *United States v. Kebodeaux* proves otherwise. 570 U.S. 387 (2013). In *Kebodeaux*, the Court heard the appeal of a defendant likewise convicted under § 2250(a)(2)(A), who was required to register

---

[10] As Appellant recognizes, his motion referred to the wrong subsection of § 2250. *See* Br. at 4. The United States assumes for current purposes that Simpson's motion (23R. Doc. 26) made the same argument he now makes on appeal.

Appellate Case: 24-2575    Page: 35    Date Filed: 06/23/2025 Entry ID: 5529387

as a sex offender based on a prior conviction for a sex offense in military court. *Id.* at 389–90. In deciding the case, the Court considered "whether the Constitution's Necessary and Proper Clause grants Congress the power to enact SORNA's registration requirements and apply them" to this offender. *Id.* at 389.[11] The Court concluded it did. *Id.* at 399; *see also United States v. Coppock*, 765 F.3d 921, 925 (8th Cir. 2014) (applying *Kebodeaux* to similar facts).

In so finding, the Supreme Court recognized that "[t]he scope of the Necessary and Proper Clause is broad." *Kebodeaux*, 570 U.S. at 393. The Clause "leaves to Congress a large discretion as to the means that may be employed in executing a given power." *Id.* at 394 (quoting *Champion v. Ames (Lottery Case)*, 188 U.S. 321 (1903) (alterations omitted)). Consistent with that discretion, the Clause "authorizes Congress, in the implementation of other explicit powers, to create federal crimes … to ensure the public's safety through systems of parole and supervised release, and, where a federal prisoner's mental condition so requires, to confine that prisoner civilly after the expiration of his or her term of imprisonment." *Id.* at 394–95 (citing *United States v. Comstock*, 560 U.S. 126, 136–137 (2010)). So long as a "statute constitutes a means that is rationally related to the implementation of a

_____

[11] The exact issue on appeal was whether the Necessary and Proper Clause permitted Congress to regulate the defendant's intrastate movements through registration for a defendant "who had completed his sentence prior to the time of SORNA's enactment." *Id.* at 389–390. Simpson's underlying conviction for receipt of child pornography occurred after the enactment of SORNA.

26

constitutionally enumerated power," the Clause grants Congress the authority to enact it. *Comstock*, 560 U.S. at 134 (citing *Sabri v. United States*, 541 U.S. 600, 605 (2004)).

Given this broad authority afforded by the Necessary and Proper Clause, the Supreme Court found it within Congress's power to require Kebodeaux to register as a sex offender:

> Here, under the authority granted to it by the Military Regulation and Necessary and Proper Clauses, Congress could promulgate the Uniform Code of Military Justice. It could specify that the sex offense of which Kebodeaux was convicted was a military crime under that Code. It could punish that crime through imprisonment and by placing conditions upon Kebodeaux's release. And it could make the civil registration requirement at issue here a consequence of Kebodeaux's offense and conviction. This civil requirement . . . was a consequence of his violation of federal law.

*Id.* at 395. The Court recognized that SORNA's registration requirements were rationally related to Congress's power to regulate Kebodeaux's conduct (*i.e.*, his original sex offense) under its Military Regulation powers. *Id.* at 395–97 (noting it was "entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA's registration requirements by federal sex offenders") (quoting *Carr v. United States*, 560 U.S. 438, 452 (2010)). This Court, applying *Kebodeaux*, further recognized that Congress's authority to apply SORNA's registration requirements comes with it the authority "to punish

27

violations of SORNA with criminal penalties under § 2250(a)." *Coppock*, 765 F.3d at 924–25 (applying *Kebodeaux* to uphold constitutionality of § 2250(a)(2)(A) as applied to facts similar to those in *Kebodeaux*). In short, just as the law criminalizing Kebodeaux's sex offense was within Congress's constitutional authority, so too was SORNA.

*Kebodeaux* controls the Court's analysis here. Simpson was originally convicted of receipt of child pornography under 18 U.S.C. § 2252A(a)(2). 10R. Doc. 71. Simpson's statute of conviction "plainly withstands constitutional scrutiny as an exercise of congressional authority under the Commerce Clause to regulate interstate trafficking of child pornography." *United States v. Brune*, 767 F.3d 1009, 1017 (10th Cir. 2014); *see also United States v. Giboney*, 863 F.3d 1022, 1026–27 (8th Cir. 2017). It follows from *Kebodeaux* that Congress can make a consequence of Simpson's offense that he register as a sex offender. *See Kebodeaux*, 570 U.S. at 395; *see also Coppock*, 765 F.3d at 924. And Congress can further impose criminal penalties for noncompliance with that registration requirement. *See Coppock*, 765 F.3d at 924–25. Thus, "because the constitutionality of the underlying statute cannot reasonably be questioned, SORNA's registration requirements are a limited and rational extension of congressional power, as permitted by the Necessary and Proper Clause." *Brune*, 767 F.3d at 1017.

28

Simpson's two responses are unpersuasive. Simpson claims that his case is "different from *Kebodeaux*" because his conviction was "not a conviction by a military tribunal . . . but rather simply conviction of a federal crime." Br. at 27. Every court of appeals to have considered this factual difference has found it inconsequential. *See United States v. Thompson*, 811 F.3d 717, 723–25 (5th Cir. 2016) (applying *Kebodeaux* to uphold prosecution for SORNA where statute criminalizing underlying sex offense was a constitutional exercise of Congress's power under the Commerce Clause); *United States v. Brune*, 767 F.3d 1009, 1016–17 (10th Cir. 2014) (same under Commerce Clause); *United States v. Elk Shoulder*, 738 F.3d 948, 958–59 (9th Cir. 2013) (same under Property Clause); *see also United States v. Hyman*, 665 F. App'x 44, 47–48 (2d Cir. 2016) (same under Commerce Clause under plain error review). Put simply, *Kebodeaux*'s "analysis does not confine SORNA's constitutionality to applications involving only the Military Regulation Clause." *Thompson*, 811 F.3d at 725. Simpson identifies no precedent to the contrary.[12] As such, this Court should follow the decisions of its sister circuits and apply *Kebodeaux*'s reasoning here.

Simpson's other counter rests on the mistaken premise that the Commerce Clause is irrelevant to his case. *See* Br. at 23–25. Simpson distinguishes his conviction under § 2250(a)(2)(A) with those under a different provision of SORNA

---

[12] Simpson cites only a dissenting opinion in *Kebodeaux*. *See* Br. at 26–27.

requiring proof the defendant traveled in interstate commerce. *See* 18 U.S.C. § 2250(a)(2)(B). Simpson further, while ignoring *Kebodeaux*'s holding, points to Chief Justice Roberts's concurring opinion cautioning that there is no general "federal police power" that by itself authorizes applying SORNA to federal sex offenders. Br. at 26–27; *see also Kebodeaux*, 570 U.S. at 401–02.[13] Simpson infers from this that "the mere fact of his prior federal conviction" does not give Congress the power to penalize the "purely intrastate failure of a federal sex offender to register" under § 2250(a)(2)(A). Br. at 25–26.

Simpson misses the point. The district court did not find, and the United States has not argued, that Simpson's SORNA conviction is constitutional simply by virtue of his status as a federal felon.[14] Rather, as *Kebodeaux* makes clear, SORNA is constitutional as applied to a defendant like Simpson because it reasonably relates to regulating and punishing a defendant's violation of federal child-pornography laws, which is necessarily subject to one of Congress's

---

[13] The Chief Justice's vote was not necessary for the majority, and his opinion made clear, "I do not understand the majority's opinion to be based on such a power." *Kebodeaux*, 570 U.S. at 403. In any event, however persuasive, "we are not bound by a Supreme Court concurrence when it accompanies a majority opinion." *United States v. Freeman*, 964 F.3d 774, 780 n.4 (8th Cir. 2020).

[14] Though Simpson states the "mere fact of his prior federal conviction did not give the federal Government authority to regulate in an area traditionally left to the states," Br. at 25, he does not raise on appeal a Tenth Amendment challenge to SORNA. Wisely so, as this Court has previously rejected such a challenge. *See United States v. Smith*, 655 F.3d 839, 848 (8th Cir. 2011).

30

enumerated powers.  In Simpson's case, that enumerated power is the Commerce Clause.

### C. *SORNA's registration requirements, even as applied to purely intrastate sex offenders, are a valid exercise of Congress's power under the Commerce and Necessary and Proper Clauses to regulate interstate movement of sex offenders.*

For an independent reason—one entirely ignored by Simpson—the Commerce and Necessary and Proper Clauses provide authority for Congress to apply SORNA to Simpson's failure to register:  SORNA's registration requirement, 34 U.S.C. § 20913, is constitutional under Congress's authority to regulate the interstate movement of sex offenders, *even as applied to purely intrastate sex offenders*.  *United States v. Howell*, 552 F.3d 709 (2009).[15]  Even though such offenders do not have a substantial effect on interstate commerce, Congress can require them to register under the Commerce and Necessary and Proper Clauses as a necessary part of a more general scheme to "monitor the location and travels of sex offenders."  *See id.* at 714–17 (citing *Gonzales v. Raich*, 545 U.S. 1, 35–37 (2005) (Scalia, J., concurring)).  Accordingly, "[a]lthough § 16913 may reach a wholly intrastate sex offender for registry information, § 16913 is a reasonable means to track those offenders if they move across state lines."  *Id.*; *see also United States v. Anderson*, 771 F.3d 1064, 1070 (8th Cir. 2014) (reaffirming *Howell*'s

---

[15] At the time of this decision, SORNA's registration requirement was codified at 42 U.S.C. § 16913.

Appellate Case: 24-2575     Page: 41     Date Filed: 06/23/2025 Entry ID: 5529387

holding); *United States v. Guzman*, 591 F.3d 83, 91 (2d Cir. 2010) (holding the same).

On appeal, Simpson does not challenge 34 U.S.C. § 20913 as a valid exercise of congressional authority under the Commerce Clause or its application to him. And it is well settled that Congress, under the Necessary and Proper Clause, may enforce the valid exercise of its constitutional powers through criminal enforcement. *See Comstock*, 560 U.S. at 135–37. It follows then that Congress has the authority to apply SORNA's criminal penalties to Simpson to enforce its validly enacted registration requirement in SORNA. *See Coppock*, 765 F.3d at 924–25; *see also United States v. Yelloweagle*, 643 F.3d 1275, 1289 (10th Cir. 2011) (finding that, assuming SORNA's registration requirement is authorized by the Commerce Clause, "under the jurisprudence of the Necessary and Proper Clause, it naturally follows that Congress can enact criminal statutes calculated to enforce that registration scheme").

### D. The district court did not plainly err for not sua sponte dismissing the indictment on Due Process grounds.

For the first time on appeal, Simpson argues that SORNA violates due process because Congress lacked a rational basis for imposing a registration requirement on sex offenders. Br. at 28–29. Because this claim has no legal basis, Simpson cannot show any error, let alone one that affected his substantial rights, by the district court not dismissing the indictment *sua sponte* on this basis.

32

As Simpson acknowledges, even if preserved, his due process claim would be subject only to rational basis review. Br. at 29; *see also Gunderson v. Hvass*, 339 F.3d 639, 643 (8th Cir. 2003) (finding rational basis scrutiny applies to substantive due process claim because sex offender registration statute "does not implicate a fundamental right"). "This standard of review is a paradigm of judicial restraint." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993). On rational-basis review, statutes are entitled to a "strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319 (1993). A statute passes rational basis scrutiny so long as "there is any reasonably conceivable state of facts that could provide a rational basis" for it. *Beach Communications*, 508 U.S. at 313. Accordingly, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* at 315. A statute is presumed constitutional, and to succeed in his claim, Simpson bears the burden "to negative every conceivable basis" for SORNA. *Heller*, 509 U.S. at 320 (quotation omitted).

Simpson does not cite, and the United States is unaware, of a single case finding SORNA's sex offender registration requirement lacks a rational basis. To the contrary, the undisputed purpose of SORNA was to replace a previous "patchwork of federal and 50 individual state registration systems" with a "more uniform and effective" system for monitoring sex offenders. *Reynolds v. United States*, 565 U.S. 432, 435 (2012). And case law is replete with decisions recognizing

33

that Congress could reasonably conclude that a national registry advanced the goal of protecting the public from federal sex offenders. *See, e.g.*, *Kebodeaux*, 570 U.S. at 395 ("Congress could reasonably conclude that registration requirements applied to federal sex offenders after their release can help protect the public from those federal sex offenders and alleviate public safety concerns." (citing *Smith v. Doe*, 538 U.S. 84, 102–03 (2003)); *United States v. Juvenile Male*, 670 F.3d 999, 1012–13 (9th Cir. 2012) (citing cases rejecting substantive due process challenges to registration).

Simpson's lone argument seems to be this oft-cited rational basis does not hold up because "child pornography offenders like Mr. Simpson" are not more likely to recidivate than other offenders, citing various statistics. Br. at 28–29. But the existence of "conflicting evidence on this point" does not preclude Congress from concluding otherwise. *Kebodeaux*, 570 U.S. at 396 (recognizing Congress can weigh such evidence and "reach a rational conclusion, for example, that safety needs justify postrelease registration rules"). As such, Simpson's rational basis challenge fails.

## II. The district court did not abuse its discretion by varying upward and sentencing Simpson to 60 months' imprisonment for his SORNA conviction considering his multiple, repeated refusals to register as a sex offender.

Simpson next challenges his 60-month sentence as substantively unreasonable. Br. at 32–34. Simpson identifies two ways in which the district court

34

purportedly abused its discretion in fashioning the sentence. First, Simpson asserts that the court "committed an error in judgment" in weighing permissible sentencing factors, specifically by giving "undue weight" to the need for the sentence to promote respect for the law, Br. at 32, and by "fail[ing] to give appropriate weight" to what Simpson believes are his mitigating history and characteristics, Br. at 32–33. Second, Simpson contends that the court "apparently [did not] consider possible sentencing disparities as required by § 3553(a)(5)." Br. at 33. Neither argument has merit.

### A. *Standard of Review*

A deferential abuse-of-discretion standard applies to substantive reasonableness challenges. *See Holguin-Hernandez v. United States*, 589 U.S. 169, 174–75 (2020). This Court "afford[s] wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. White*, 816 F.3d 976, 988 (8th Cir. 2016) (internal quotation marks omitted). The sentencing court abuses its broad discretion only when it "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Cloud*, 956 F.3d 985, 987 (8th Cir. 2019) (quotation omitted). However, if a defendant fails to object to the first two of these grounds at sentencing,

the assignment of error is forfeited and may be reviewed only for plain error. *See United States v. Saddler*, 538 F.3d 879, 891 (8th Cir. 2008) (plain-error review for forfeited claim that some factors received no weight); *United States v. O'Connor*, 567 F.3d 395 (8th Cir. 2009) (same for weighing an improper factor).

Whether reviewed for plain error or abuse of discretion, this Court has strongly emphasized that it is only in the "unusual case when [this Court will] reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). In reviewing above-Guidelines sentences, appellate courts "may not apply a presumption of unreasonableness." *Gall v. United States*, 552 U.S. 38, 51 (2007). Nor are "'extraordinary circumstances [required] to justify a sentence outside the guidelines range." *United States v. Hummingbird*, 743 F.3d 636, 638 (8th Cir. 2014) (per curiam) (citation omitted). While this Court certainly "may consider the extent of the deviation," it ultimately "must give due deference to the district court's decision that the 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. In other words, the Court "may not . . . set aside a sentence merely because [it] would have decided that another one is more appropriate." *United States v. Richart*, 662 F.3d 1037, 1054 (8th Cir. 2011) (citation omitted).

Appellate Case: 24-2575    Page: 46    Date Filed: 06/23/2025 Entry ID: 5529387

**B. The district court did not abuse its discretion by varying upward based on Simpson's repeated refusals over a decade to register as a sex offender and to submit to supervision.**

Simpson's primary argument is that his history and characteristics and criminal history "both suggested that a sentence at or below the bottom of the guidelines range was an appropriate sentence in this case." Br. at 32. Simpson asserts that "despite his lack of supervision over the years, aside from the failure to register[,] he was not committing crimes" and claims his conduct posed no "danger to society or any other specific person." *Id.* at 32–33.

As an initial matter, the district court was right to not view Simpson's history withs such rose-colored glasses. Simpson's purported compliance and self-sufficiency while absconding ignores the operative fact *he had absconded*. And as the United States pointed out at sentencing, Simpson's self-reported good behavior was unverified precisely because Simpson had absconded and refused to submit to supervision for three years. Sent. Tr. at 15. The record makes clear that the court was concerned about Simpson's "absconding" and his "continued failure to register" despite his prior supervised release revocations, and viewed those facts as demonstrating Simpson had "totally no respect for the law." *See id.* at 21. Simpson provides no persuasive reason why the court abused its discretion to view these circumstances as such.

37

Indeed, the district court was well-within its discretion to upwardly vary based on Simpson's history. This Court has "repeatedly stated that variances are appropriate based on repeated violations of supervised release." *United States v. Clark*, 998 F.3d 363, 368 (8th Cir. 2021) (quoting *United States v. Hall*, 931 F.3d 694, 698 (8th Cir. 2019)). So too has this Court upheld upward variances "to accurately reflect [a defendant's] criminal history and his likelihood of committing more crimes." *United States v. Taylor*, 864 F.3d 851, 852 (8th Cir. 2017). Though "[e]ven minor crimes" and offenses that "standing alone are not particularly serious, and bear no similarity to the instant charges" may "show a likelihood of recidivism," *United States v. Isler*, 983 F.3d 335, 344 (8th Cir. 2020) (quotations omitted), the court's discretion to vary upward is particularly appropriate where, as here, a defendant's prior criminal history is related to his underlying crime, *see United States v. David*, 682 F.3d 1074, 1077 (8th Cir. 2012) ("It is, in fact, well understood that an upward variance may be warranted where a defendant repeats his or her criminal conduct shortly after completing punishment for a previous offense.").

Accordingly, Simpson's three prior supervised release revocations for refusing to register as a sex offender no doubt permitted an upward variance at sentencing for refusing to register as a sex offender. Moreover, Simpson's prior revocations did not factor into the calculation of his Sentencing Guidelines range; his receipt of child pornography conviction and three revocations resulted in a total

38

of only three criminal history points. PSR, p. 6–7. Given that fact, the district court did not abuse its discretion in concluding a Guidelines sentence did not adequately account for Simpson's history. *See, e.g.*, *David*, 682 F.3d at 1077–78 (no abuse of discretion in "substantial" upward variance for felon in possession of firearm conviction where variance based on criminal history that included previous felon in possession convictions); *United States v. Mejia-Perez*, 635 F.3d 351, 353 (8th Cir. 2011) (same for upward variance in illegal reentry case based on defendant's prior uncharged illegal reentries); *United States v. Washington*, 515 F.3d 861, 866–67 (8th Cir. 2008) (same for upward variance because bank robbery defendant "return[ed] to same crime within five months of his release"); *see also United States v. Kreitinger*, 576 F.3d 500, 504 (8th Cir. 2009) (same for 25 months' upward variance for supervised release revocation where defendant committed credit card fraud while on supervision for credit card fraud conviction).

In addition, Simpson's incorrigibility and likelihood of reoffending was well-documented in the record before the district court. Simpson has made clear over the decade since first released on supervision that he does not intend to register as a sex offender as required by law and his conditions of release, so much so that even this Court has had occasion to acknowledge it. *See Simpson*, 932 F.3d at 1156 ("[Simpson] has repeatedly stated that he does not intend to comply with the terms of his supervised release, and he has repeatedly failed to comply."). Simpson had

39

received gradually increasing prison sentences for refusing to register—12 months, 18 months, and 24 months—and his efforts to avoid registering escalated to absconding for years.  This Court has recognized that a district court may properly consider whether such prior sentences have adequately deterred a defendant in deciding to impose an upward variance.  *See United States v. Manual*, 73 F.4th 989, 992 (8th Cir. 2023); *see also David*, 682 F.3d at 1077–78 (no abuse of discretion "in considering [defendant's] previous sentence as a 'bench-mark' for finding the punishment that is apparently necessary to deter [defendant] from repeating his criminal behavior").  As such, there is no question the district court acted within its discretion in considering that it had not "gotten [Simpson's] attention the last three times" he was before the court, Sent. Tr. at 21, and that any "leniency has not been effective."  *Isler*, 983 F.3d at 344 (8th Cir. 2020) (quotation omitted).

Based on Simpson's thrice being revoked for refusing to register, an upward variance to 60 months—amounting to a 36-month variance above Simpson's last revocation sentence, after which he still refused to register and absconded—was eminently reasonable.  Simpson alleges that the district court erred because the court "seemed to rely" on only one factor to justify its sentence: the need for the sentence to "promote respect for the law."  Br. at 32.[16]  While Simpson makes no attempt to

---

[16] Simpson does not allege any procedural error in the district court's recitation of the § 3553(a) sentencing factors.  *See* Br. at 31–34.  Consequently, Simpson has

40

explain how the court placed undue weight on this factor, this allegation is belied by the record.[17]  Likewise, "that the government did not seek an upward variance does not mean that the sentence was substantively unreasonable." *United States v. Luscombe*, 950 F.3d 1021, 1031 (8th Cir. 2020); *see also United States v. Gasaway*, 684 F.3d at 806, 808 (8th Cir. 2012) (upholding sentence that was nearly double what the Government recommended).  The court imposed sentence "[a]fter hearing from both the Defendant and the Government and reviewing the Presentence Report and the Government's sentencing memorandum," Sent. Tr. at 18, both of which recounted Simpson's conduct and history of refusing to register.  The court ultimately determined that, based on these facts, the relevant sentencing factors militated in favor of an upward variance.  Simpson has presented no reason this considered determination constitutes a "clear error of judgment" beyond his disagreement with the result.

### C.  *The district court did not commit plain error or otherwise abuse its discretion in not considering JSIN data.*

Simpson also claims, for the first time on appeal, that the district court failed to account for potential sentencing disparities with similarly situated defendants,

---

forfeited any such argument.  *United States v. Williamson*, 782 F.3d 397, 399 (8th Cir. 2015).

[17] The Statement of Reasons, as the basis for the variance, checked the nature and circumstances of the offense; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and the need to afford adequate deterrence to criminal conduct.  23R. Doc. 163 at 3.

Appellate Case: 24-2575     Page: 51     Date Filed: 06/23/2025 Entry ID: 5529387

specifically referring to Judiciary Sentencing Information (JSIN) data for failure-to-register cases with the same Guidelines offense level and criminal history score as Simpson. Br. at 33. Simpson failed to preserve this argument below, and this claim is reviewed only for plain error. Regardless, Simpson's argument is easily disposed of. Simpson's Guidelines range failed to take into consideration what was most important to the district court at sentencing—Simpson's multiple prior revocations and repeated refusal to register. *See supra* at 39–40. As such, Simpson's comparison to JSIN data based on that same Guidelines range is flawed. Simpson's characterization of his failure-to-register conviction as a "mine-run" case is laughable in light of his history, Br. at 34, and the district court in no way erred by not comparing Simpson to dissimilar defendants.

## III. The district court did not err or otherwise abuse its discretion in imposing a new lifetime term of supervised release as had been imposed following his original conviction and three previous revocations.

Turning to his revocation sentence, Simpson challenges the reimposition of lifetime supervision. Simpson first alleges the district court procedurally erred by not explaining the basis for the term of supervised release. Br. at 16–17. Simpson also claims that the length of this term was substantively unreasonable. Br. at 17–22. These claims are belied by the record or otherwise fail as a matter of law.

42

### A. Standard of Review

This Court "review[s] the district court's revocation sentencing decision under the *same* deferential-abuse-of-discretion standard that applies to *initial* sentencing proceedings." *United States v. Johnson*, 827 F.3d 740, 744 (8th Cir. 2016) (internal quotation marks and citation omitted); *see also supra* at 35–37. Where, as here, appellant alleged both procedural and substantive errors, "[t]his standard requires us first to ensure that the district court committed no significant procedural error and second, if there is not procedural error, to ensure the sentence was substantively reasonable." *Id.* (internal quotation marks and citation omitted). However, as with challenges to the district court's consideration of an improper factor at sentencing, if an alleged procedural error was not raised in the district court, this Court reviews only for plain error. *Clark*, 998 F.3d at 367.

"If the district court imposes a within-Guidelines sentence, this court presumes the sentencing is reasonable, and [appellant] bears the burden to rebut the presumption." *United States v. Phillips*, 785 F.3d 282, 284 (8th Cir. 2015) (quotation omitted).

### B. The district court did not procedurally commit plain error or otherwise abuse its discretion by properly considering the applicable sentencing factors and identifying facts relevant to those factors.

As for procedural error, Simpson alleges "the court did not at any point explain why it believed such a long term of supervision was necessary." Br. at 16–

43

17. Because Simpson failed to object the adequacy of the district court's explanation for lifetime supervision, this claim is reviewed only for plain error. *See* Sent. Tr. at 35. In any event, Simpson's allegation is unsupported by the record. Before imposing sentence following revocation of Simpson's supervised release, the district court stated as follows:

> Based upon Simpson's ongoing blatant defiance of federal, state, and local sex offender registration laws, Simpson's history of violations, the seriousness of the offense, and his refusal to engage in the basic first step of reporting as directed for supervised release, it appears Simpson is not amenable to community supervision at this time.

Sent. Tr. at 27. The district court made clear it had considered the Sentencing Guidelines and statutory sentencing factors before imposing sentence, including supervision. *Id.* at 28. Furthermore, the court was aware of its discretion to impose a new term of supervision and the permissible length of said term. *Id.*; 10R. Doc. 309, at 7 (Sentencing Computation).

Simpson fails to identify any procedural error on this record, much less a plain one. While the district court must consider the relevant sentencing factors, "[t]he court need not, however, 'mechanically list every § 3553(a) consideration.'" *United States v. DeMarrias*, 895 F.3d 570, 573 (8th Cir. 2018) (quotation omitted). "If it is evident the district court was aware of the relevant factors in imposing the sentence, we may affirm the sentence without specific findings on each factor." *Johnson*, 827

44

F.3d at 745. "In explaining the sentence, the district court need only set forth enough to satisfy the appellate court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority." *Clark*, 998 F.3d at 368 (cleaned up).

Here, the district court specifically stated it had considered the relevant sentencing factors and recited facts relevant to those factors. Sent. Tr. at 27–28. Contrary to what Simpson alleges, the district court provided an explanation for its sentence, and this explanation was procedurally sufficient. *See Johnson*, 827 F.3d at 745 (no procedural error where district court "properly considered Johnson's history, characteristics, and conduct").

### C. The district court based its presumptively reasonable revocation sentence only on permissible factors, and thus neither plainly erred nor abused its discretion.

Simpson next acknowledges the district court *did* in fact justify lifetime supervision but argues it relied on an improper factor in doing so. Br. at 17. Simpson alleges that "the only justification of the . . . supervised release that was offered by the court was the need to promote respect for the law, as articulated as a sentencing factor in § 3553(a)(2)(A)." Br. at 17, 19; *see also* 18 U.S.C. § 3553(a)(2)(A) ("the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense"). Because courts cannot consider § 3553(a)(2)(A) when revoking a term of supervised release, Simpson claims the

45

district court erred by considering respect for law here. Br. at 17–18; *see also* 18 U.S.C. § 3583(e) (not cross-referencing § 3553(a)(2)(A) among relevant factors). Simpson likewise failed to make this objection before the district court, so plain error review applies. *See* Sent. Tr. at 35.

First and foremost, Simpson's claim misconstrues the record. The district court indicated it had considered the relevant sentencing factors and *never* identified respect for law as one of those factors. *See* Sent. Tr. at 27–28. Rather, the court pointed to Simpson's "ongoing blatant defiance of . . . sex offender registration laws," his "history of violations," the "seriousness of the offense," and his refusal to "engage in the basic first step of reporting as directed for supervised release." *Id.* at 27. There is no question that the court acted within its discretion to consider these facts as relevant to the nature and circumstances of the offense; the history and characteristics of Simpson, *see, e.g., Clark*, 998 F.3d at 369–70 (considering "repeated violations of the terms of his or her supervised release"); the need for the sentence to afford adequate deterrence, *see, e.g., United States v. Larison*, 432 F.3d 921, 923 (8th Cir. 2006) (considering defendant's "inability to confirm his conduct to the law" as relevant to need for deterrence); and the need for the sentence to protect the public from further crimes, *see, e.g., United States v. Asalati*, 615 F.3d 1001, 1007 (8th Cir. 2010) (considering "concern for public safety" based on defendant's criminal history). *See* 18 U.S.C. § 3583(e). In short, the court "properly

Appellate Case: 24-2575     Page: 56     Date Filed: 06/23/2025 Entry ID: 5529387

considered [Simpson's] history, characteristics, and conduct." *Johnson*, 827 F.3d at 745.

The Supreme Court's recent decision in *United States v. Esteras*, 606 U.S. ---, 2025 WL 1716137 (June 20, 2025), does not change the outcome. While *Esteras* held that courts cannot consider § 3553(a)(2)(A) when revoking supervised release, *Esteras* reaffirmed that courts may properly consider enumerated factors, including the history and characteristics of the defendant, "as relevant for . . . deterrence, incapacitation, and rehabilitation." *Id.* at *9. "[W]hen a defendant violates the conditions of his supervised release . . . a court must consider the *forward-looking* ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the *backward-looking* purpose of retribution." *Id.* at *7. At the same time, the Court acknowledged relevant factors could theoretically inform both purposes. For example, a defendant's "particularly violent" underlying offense could properly "inform the court's judgment as to whether revocation is necessary 'to protect the public from further crimes of the defendant.'" *Id.*, at *9. However, the court "could not revoke based on the view that, given the violent nature of the underlying offense, the defendant deserves additional punishment." *Id.* Accordingly, *Esteras* leaves undisturbed the court's discretion to consider the seriousness of supervised release violations as relevant to the need to deter and protect the public. *See Clark*, 998 F.3d at 369–70.

47

Here, contrary to what Simpsons suggests, the district court did not consider his history and characteristics and the seriousness of his violations for retributive purposes. Rather, the court concluded "[b]ased upon" those factors that Simpson was "not amenable to community supervision at this time," instead speaking to the need for deterrence, incapacitation, and rehabilitation.[18] Indeed, this Court has recognized even explicit references to respect for law as "accurately describ[ing] [a defendant's] breach of trust" and relevant to revocation. *See United States v. Porter*, 974 F.3d 905, 908–09 (8th Cir. 2020) (finding pre-*Esteras* that court did not give significant weight to improper factor when describing violations of supervised release as demonstrating "disrespect for the law").[19] Thus, Simpson's mischaracterization of the court's findings as about respect for law is unpersuasive.

---

[18] It is clear from the record that, when the Court referred to the "seriousness of the offense," it was referring to the seriousness of the violation conduct. *See* Sent. Tr., p. 27 (discussing blatant violation of sex offender registration laws and failing to report). Regardless, the United States does not read *Esteras* to preclude consideration of the nature of the underlying offense under § 3553(a)(1)—including its seriousness—so long as it is relevant to an enumerated purpose. *Esteras*, 2025 WL 1716137, at *6 ("In the context of a revocation hearing, the 'offense' is the underlying crime of conviction, not the violation of the supervised-release conditions."). Here, the court made clear its purpose was deterrence, incapacitation, and rehabilitation.

[19] Before *Esteras*, this Court held that a district court does not abuse its discretion by mentioning "respect for law" at a revocation hearing. *Porter*, 974 F.3d at 908. Instead, a district court abused its discretion only if it gave *significant* weight to an improper or irrelevant factor abuses its discretion. *Id.* at 908; *see also Hall*, 931 F.3d at 697.

Appellate Case: 24-2575    Page: 58    Date Filed: 06/23/2025 Entry ID: 5529387

But even if the district court considered respect for law to some degree, Simpson is not entitled to relief. As *Esteras* makes clear, "[i]f the defendant does not make the district court aware that it may be impermissibly relying on § 3553(a)(2)(A), then the defendant's appeal will be governed by plain-error review." *Esteras*, 606 U.S. ---, 2025 WL 1716137, at *10. On plain-error review, the court's sentence "will be affirmed unless it is 'clear' or 'obvious' that the district court actually relied on § 3553(a)(2)(A)—*because it did so either expressly or by unmistakable implication*." *Id.* (emphasis added). Here, Simpson cannot point to an express or unmistakable reference to respect for law in the district court's pronouncement. Instead, the court was clearly concerned with Simpson's history and characteristics—namely his multiple blatant refusals to register as required by his conditions—and the need to deter him and protect the public as a result. In light of these concerns, Simpson cannot meet his burden to demonstrate a clear error that affected his substantial rights. *See United States v. Dull*, 641 F. App'x 669, 671 (8th Cir. 2016) (district court's reference to need to promote respect for law did not affect defendant's substantial rights); *United States v. Booker*, 63 F.4th 1254, 1262 (10th Cir. 2023) (finding error in district court citing § 3553(a)(2)(A) did not affect substantial rights where district court focused on permissible factors).

49

**D.** ***The district court did not abuse its discretion by imposing a presumptively reasonable sentence in light of Simpson's history of refusing to comply with his conditions of supervision.***

Finally, Simpson claims the district court "committed a clear error in judgment" by imposing a lifetime term of supervised release. Simpson's primary contention is that the imposition of lifetime supervision was "illogical" based on the district court's conclusion that he "was not amenable to community supervision at this time." Br. at 20; Sent. Tr. at 27.

The district court's conclusion was a well-supported comment on Simpson's persistent refusal to comply with his conditions of supervision. Non-compliance with supervision in no way precludes the district court from exercising its discretion to nonetheless impose supervision. *See, e.g.*, *United States v. Kimball*, 830 F.3d 747, 750 (8th Cir. 2016) (rejecting argument "it was illogical for the court to reimpose the condition that he reside at a residential reentry center after finding that he would not follow the rules at such a center"); *United States v. Melton*, 666 F.3d 513, 518 (8th Cir. 2012) (finding no cases indicating a court errs by imposing condition requiring defendant to reside at residential reentry center "merely because he has failed to succeed there in the past"). To the contrary, history on supervised release is relevant to the court's determination under § 3583(e), and courts have the discretion to weigh supervised release violations in favor of the need for, not against, further rehabilitation and supervision. *See, e.g.*, *Asalati*, 615 F.3d at 1007

50

(imposition of lifetime supervision, notwithstanding defendant's alien status and removability, was not abuse of discretion because, based on defendant's "repeated infractions," the district court "saw fit to 'keep [defendant] under tight reins while in the country). Accepting Simpson's position would instead reward defendants who, like him, intentionally refuse to comply with supervision.

At bottom, Simpson provides no persuasive reason why the district court committed a "clear error in judgment" in imposing a presumptively reasonable term of supervision. His claims that lifetime supervision did not "serve[] any rehabilitative purpose," Br. at 20, and that he was self-compliant while absconding, Br. at 22, amount to nothing more than his disagreement with the court's assessment of the need for further supervision and the relevant sentencing factors. Indeed, the court considered the relevant factors under § 3583(e), namely Simpson's ten-year history on supervision, during which Simpson had *never* submitted to supervision. As such, it was reasonable for Judge White to deem further supervision necessary and to reimpose the same term as that imposed by the original sentencing judge. Because Simpson presents no reason why this constitutes a "clear error of judgment," there is no basis for reversal.

Appellate Case: 24-2575    Page: 61    Date Filed: 06/23/2025 Entry ID: 5529387

# IV. The supervised release statute does not violate the Double Jeopardy Clause.

### A. *Simpson's constitutional challenge to the supervised release statute is an unreviewable collateral attack on his underlying conviction.*

While ordinarily this Court reviews *de novo* challenges based on the Double Jeopardy Clause, *United States v. Davies*, 380 F.3d 329, 332 (8th Cir. 2004), this Court has repeatedly rejected Simpson's claim as an "improperly raised collateral attack[] on his underlying conviction and sentence" in his prior appeals. *See Simpson*, 653 F. App'x at 851; *Simpson*, 704 F. App'x at 609; *Simpson*, 932 F.3d at 1156–57. Because Simpson did not challenge the imposition of supervised release on direct appeal or in a post-conviction proceeding, Simpson cannot do so now. *Miller*, 557 F.3d at 913. For the fourth time, then, this Court should refuse to consider this claim. *See Simpson*, 932 F.3d at 1156–57 ("When a court decides a rule of law, that decision governs the same issues in subsequent stages of the case.").

Simpson's argument that the Supreme Court's decision in *United States v. Haymond* lifts this procedural bar is unavailing. *Haymond* concerned a provision of the supervised release statute that mandated a minimum sentence of five years' imprisonment upon revocation of supervised release if a defendant committed certain offenses while on supervision. 588 U.S. 634, 639 (2019) (citing 18 U.S.C. § 3583(k)). Citing *Apprendi v. New Jersey*, the Supreme Court held § 3583(k) violated the right to a jury trial because it permitted judicial factfinding by a preponderance

52

of the evidence to "trigger[] a new punishment in the form of a prison term of at least five years and up to life." *Haymond*, 588 U.S. at 645–46. *Haymond* said nothing of the procedural bar at issue here.

But this provision of § 3583(k) is inapplicable to Simpson's revocation. Simpson's revocation and subsequent sentencing, pursuant to § 3583(e), did not raise the minimum—or maximum—sentence beyond that imposed at his sentencing. And this Court has clearly limited *Haymond*'s holding to § 3583(k). *See United States v. Wilson*, 939 F.3d 929, 933 (8th Cir. 2019) (holding *Haymond* inapplicable to revocations under § 3583(g)); *United States v. Eagle Chasing*, 965 F.3d 647, 650–51 (8th Cir. 2020) (same to revocations under § 3583(e)). Indeed, since *Haymond* was decided, this Court has continued to dismiss challenges to the validity of supervised release raised for the first time on appeal from a revocation proceeding, *including Simpson's last appeal*. *See, e.g.*, *Simpson*, 932 F.3d at 1156–57; *United States v. Orr*, No. 23-2633, 2024 WL 1070071, at *1 (8th Cir. Mar. 12, 2024); *United States v. Bowman*, No. 23-1952, 2023 WL 7153255, at *1 (8th Cir. Oct. 31, 2023); *United States v. Thomas*, No. 22-2766, 2023 WL 6459014, at *1 (8th Cir. Oct. 4, 2023). Thus, whatever *Haymond* implies, if anything, about collateral attacks on underlying sentences, that implication is confined to revocations not at issue here.

Appellate Case: 24-2575    Page: 63    Date Filed: 06/23/2025 Entry ID: 5529387

### B. In any event, revocation of supervised release does not violate the Double Jeopardy Clause.

Even if, on this fourth go-round, this Court were to consider the merits of Simpson's claim, his claim would fail as a matter of law. Double jeopardy simply does not apply to supervised release revocations because such proceedings are not criminal prosecutions. *United States v. Bennett*, 561 F.3d 799, 802 (8th Cir. 2009); *see also United States v. House*, 501 F.3d 928, 931 (8th Cir. 2007). "[T]he revocation of supervised release is a penalty attributable to the original conviction, not a new punishment." *Bennett*, 561 F.3d at 802 (citing *Johnson v. United States*, 529 U.S. 694, 700–01 (2000)). Simpson's supervised release term was specifically authorized by § 3583(k) and was part of his original sentence. As such, Simpson's revocation of his supervised release did not subject him to double jeopardy.

## <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court affirm Appellant's conviction and sentence in No. 4:10-CR-00169-RWS and revocation of supervised release and sentence in No. 4:23-CR-00297-RLW.

Dated: June 20, 2025

Respectfully submitted,

MATTHEW T. DRAKE
Acting United States Attorney

*/s/ Jonathan A. Clow*
JONATHAN A. CLOW, #68003MO
Assistant United States Attorney
111 South Tenth Street, 20th Floor
Saint Louis, Missouri 63102

55

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32 and Eighth Circuit Local Rule 28A(h), the undersigned hereby certifies that the foregoing brief is set in 14-point, Times New Roman font and that it contains 12,796 words, as determined by the Microsoft Word word-counting feature. The undersigned further certifies that the electronic version of the brief has been scanned for viruses and is virus-free.

*/s/ Jonathan A. Clow*
JONATHAN A. CLOW, #68003MO
Assistant United States Attorney

56

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Appellate Procedure 25(d) and Eighth Circuit Local Rule 25A(e), the undersigned hereby certifies that, on **June 20, 2025**, the foregoing brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system, which will serve all counsel of record.

*/s/Jonathan A. Clow*
JONATHAN A. CLOW, #68003MO
Assistant United States Attorney

57